STATE of Minnesota, Respondent,

v.

Steven Allen GAUSTER, Appellant.

No. A07–0488.

Supreme Court of Minnesota.

July 10, 2008.

Mark D. Nyvold, St. Paul, MN, for Appellant.

Lori Swanson, Office of the Attorney General, St. Paul, MN, David J. Hauser, Otter Tail County Attorney, Ryan C. Cheshire, Assistant County Attorney, Fergus Falls, MN, for Respondent.

State Public Defender's Office, St. Paul, MN, for Interested Observer.

Heard, considered, and decided by the court en banc.

## OPINION

ANDERSON, PAUL H., Justice.

Steven Allen Gauster, was arrested and charged with possession of a controlled substance after the police found methamphetamine in his motor vehicle during an inventory search. Gauster moved to suppress all evidence obtained during the search. After an omnibus hearing, the district court, finding the initial impoundment of Gauster's vehicle unlawful, held that the inventory search was unlawful

under the Fourth Amendment of the U.S. Constitution. Accordingly, the court suppressed all evidence obtained from the search and dismissed the charges against Gauster for lack of evidence and probable cause. The Minnesota Court of Appeals reversed. We granted review. Because we conclude that the impoundment of Gauster's vehicle was unreasonable, making the concomitant inventory search of the vehicle a violation of Gauster's Fourth Amendment rights, we reverse the court of appeals and reinstate the district court's suppression order.

Most of the facts in this case are undisputed and come from the testimony presented at an omnibus hearing. On Friday, August 25, 2006, appellant Steven Allen Gauster, while en route to a friend's house, was driving in his motor vehicle on Otter Tail County Road 3. According to Gauster, he pulled over onto the shoulder of the road to wait for his girlfriend and his cousin, who he said were following him in a separate vehicle. Gauster said he had lost contact with them sometime earlier. During this time, Otter Tail County Deputy Sheriff Scott Wagner was patrolling the area near the intersection of County Road 3 and County Road 10. While patrolling, Wagner saw Gauster's vehicle on the shoulder of the road. Without turning on his emergency lights or siren, Wagner pulled up behind the vehicle to see if the driver needed assistance.

Wagner walked up to the driver's side of Gauster's vehicle and, according to Gauster, asked Gauster what he was doing and where he was going. Gauster identified himself and told Wagner that he owned the vehicle. According to Wagner, Gauster said he was waiting for some friends and did not know exactly where he was going. But Gauster testified that he responded by pointing to the tree line down the road and indicating the location of a friend's house. Wagner testified that during this conversation, Gauster was "pleasant, cooperative, [and] polite."

While talking to Gauster, Wagner noticed the smell of alcohol on Gauster's breath and saw a twelve-pack container of alcoholic beverages on the front seat, with one bottle missing. Wagner asked Gauster if he had been drinking. According to Gauster, he told Wagner that he had consumed one beer. Wagner then asked Gauster to move the container of alcohol.[1] Gauster put the container in the trunk while Wagner stood right beside him. According to Gauster, he then got back into his vehicle and asked Wagner if he could wait for his friends a bit longer, to which Wagner said yes. Wagner then returned to his squad car and prepared to leave.

Wagner stated that as he was leaving, he ran Gauster's vehicle license plate on his squad car computer and learned that the registered owner of the vehicle had a suspended driver's license. Wagner then turned his squad car around, pulled behind Gauster's vehicle, and activated his emergency lights. Wagner again walked up to Gauster's driver's side window, told Gauster his license was suspended, and requested identification. Gauster testified that he told Wagner he was unaware of the suspension. Gauster then gave Wagner his Minnesota driver's license and again indicated that the vehicle belonged to him. According to Wagner, Gauster continued to be pleasant and polite.

Wagner also asked Gauster for proof of insurance on the vehicle. Gauster responded that he thought he had insurance and that his wife was supposed to get insurance on the vehicle, but that he did not have the insurance card with him.

---

1. Gauster testified that Wagner told him to put the beer in the trunk, but Wagner testified that it was Gauster who asked if he could put the beer in the trunk.

Gauster then provided Wagner with an insurance agency's business card.

At this point, there are some key discrepancies between Wagner's and Gauster's testimony about what occurred. According to Wagner, he went to his squad car and made several telephone calls to the telephone number listed on the business card provided by Gauster but was unable to get through to anyone. Wagner then returned to the driver's side window of Gauster's vehicle and notified Gauster that there was a problem with his insurance coverage. Wagner testified that at this point, he noticed several bottle caps on the passenger side floor of the vehicle and so he again asked Gauster if there were any open containers in the vehicle. Wagner stated that Gauster "adamantly" denied having any open containers. Wagner then walked around from the driver's side window to the passenger's side window and looked into the vehicle. Wagner testified that from this vantage point he could see an open container "shoved underneath the driver's seat, a glass bottle that appeared to be two-thirds full of beer." Wagner asked Gauster to hand him the bottle and, according to Wagner, Gauster cooperated and was polite.

Gauster, on the other hand, testified that a few minutes after Wagner went to his squad car with the insurance agency business card, Wagner approached Gauster from the passenger's side of the vehicle holding two pieces of paper in his hand. Gauster asked Wagner, "[w]hat are you giving me? * * * open bottle and no proof?" and Wagner responded yes.

Both Gauster and Wagner testified that at this point, Wagner stated that he was going to tow Gauster's vehicle. Specifically, Wagner testified that he told Gauster he was going to tow the vehicle because of Gauster's suspended driving status and because Gauster did not have proof of insurance. Gauster testified that Wagner said Gauster had 10 days to show proof of insurance but that he was still going to tow Gauster's vehicle. Wagner testified that he was planning to give Gauster "a ride to wherever he wanted to go" and that Gauster told him he wanted to go somewhere a "couple" of miles up the road. Gauster then stepped out of the vehicle and into Wagner's squad car because Wagner said he needed to conduct an inventory search of the vehicle before it was towed. Wagner specifically informed Gauster that he was not under arrest.

Both Wagner and Gauster testified that at some point after Wagner notified Gauster that he was going to have Gauster's vehicle towed and before Wagner began searching the vehicle, Gauster asked Wagner if he could have someone pick up the vehicle. Wagner testified that Gauster requested to have someone pick up the vehicle so that Gauster could avoid incurring any towing charges. According to Wagner, he told Gauster that because Wagner believed the vehicle was uninsured, he would not allow someone else to drive the vehicle away. Gauster testified that he then asked Wagner if Gauster could get the vehicle towed himself and that Wagner said Gauster could not. Wagner contradicted this statement, testifying that Gauster never suggested that he wanted to call someone to tow the vehicle.

According to Wagner, he then conducted an inventory search of Gauster's vehicle. In the back seat, Wagner found open containers with small amounts of alcohol in them. According to Wagner, he also found a pipe under the driver's seat, which he believed to be used to smoke methamphetamine. When searching the trunk, Wagner found a white plastic bag, which contained a white granular substance wrapped in clear cellophane. This substance was later determined to be methamphetamine.

According to Gauster, Wagner began the inventory search in the front passenger seat and then in the back seat, where Wagner found two empty bottles. Wagner then searched the trunk and found a bag, in which he found a package. Wagner then told Gauster he would be placed under arrest for possession of the package, which Wagner thought was methamphetamine. According to Gauster, it was at this point that Wagner looked under the driver's seat of Gauster's vehicle and found the pipe. Gauster testified that Wagner then returned to the trunk of the vehicle and pulled another package out of a bag, which Wagner thought also contained methamphetamine. Wagner then arrested Gauster. Gauster testified that the entire incident up until he was taken to jail lasted approximately one half hour.

On August 28, 2006, the Otter Tail County Attorney charged Gauster with two counts of controlled substance crime in the first degree, in violation of Minn.Stat. § 152.021, subds. 1(1) and 2(1) (2006), for possession of methamphetamine. On December 8, Gauster moved the district court to, among other things, suppress all evidence obtained as a result of the inventory search of his vehicle. The district court held an omnibus hearing to determine whether suppression of the evidence obtained during the inventory search was appropriate. After the hearing, the district court granted Gauster's suppression motion, ordering that all evidence obtained as a result of the inventory search be suppressed. The court concluded that the impoundment of Gauster's vehicle was unnecessary and thus, the concomitant inventory search was unreasonable under the Fourth Amendment of the U.S. Constitution. The court then dismissed the State's case against Gauster due to lack of evidence and probable cause to support the charges.

The State filed a motion requesting that the district court reconsider its suppression and dismissal order. On the same day, the State filed a notice of appeal to the court of appeals. The district court declined to rule on the State's motion, concluding that the State's appeal to the court of appeals, which concerned the same subject as the motion for reconsideration, divested the district court of jurisdiction to rule on the motion. After briefing and oral argument, the court of appeals reversed the district court. *State v. Gauster*, No. A07–0488, 2007 WL 2917546 (Minn.App. Oct.9, 2007). We subsequently granted Gauster's petition for further review.

I.

On appeal to our court, Gauster argues that the district court properly suppressed the evidence obtained during the inventory search of his vehicle because there was no need to impound the vehicle and Wagner should have allowed Gauster to arrange for the vehicle to be towed. The State argues that impounding Gauster's vehicle was reasonable because it could not be legally driven and Wagner did not have an affirmative duty to give Gauster a chance to make alternative towing arrangements. Additionally, the State argues for the first time on appeal that even if an inventory search of Gauster's vehicle was improper, the search was nevertheless justified under the automobile exception to the warrant requirement. Gauster moved to strike the State's briefing on the automobile exception, arguing that our court cannot consider this issue for the first time on appeal. Gauster asserts that the record is not sufficiently developed to allow this court to resolve this issue. We deferred any ruling on Gauster's motion to strike until consideration of the matter on the merits.

When reviewing a district court's pretrial order on a motion to suppress evidence, "we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Jordan,* 742 N.W.2d 149, 152 (Minn.2007) (citing *State v. Bourke,* 718 N.W.2d 922, 927 (Minn.2006)). We may independently review facts that are not in dispute, and "determine, as a matter of law, whether the evidence need be suppressed." *State v. Othoudt,* 482 N.W.2d 218, 221 (Minn. 1992). But we "will not overturn a pretrial order of the district court unless 'the state demonstrates clearly and unequivocally that the [district] court erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial.'" *State v. Robb,* 605 N.W.2d 96, 99 (Minn.2000) (quoting *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977)). Here, because the suppression of evidence led to the dismissal of the charges against Gauster, it is not disputed that the suppression had a critical impact on the outcome of Gauster's case. *See State v. Holmes,* 569 N.W.2d 181, 184 (Minn.1997) ("The dismissal of the charge following a suppression of all the evidence clearly meets the critical impact element * * *."). Thus, we will reverse the district court's order "only if the state demonstrates clearly and unequivocally that the [district] court erred in its judgment." *Id.*

The U.S. Constitution and the Minnesota Constitution both prohibit unreasonable searches or seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10; *see also South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Generally, warrantless searches are per se unreasonable. *State v. Ture,* 632 N.W.2d 621, 627 (Minn. 2001). But "inventory searches are now a well-defined exception to the warrant requirement." *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739

(1987); *see Opperman,* 428 U.S. at 373, 96 S.Ct. 3092. Thus, an inventory search "conducted pursuant to a standard police procedure prior to lawfully impounding an automobile [is] not unconstitutional under the Fourth Amendment." *State v. Goodrich,* 256 N.W.2d 506, 510 (Minn.1977). Inventory searches are considered reasonable because of their administrative and caretaking functions. *Holmes,* 569 N.W.2d at 186. These functions "serve to protect an owners property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine,* 479 U.S. at 372, 107 S.Ct. 738; *see also Goodrich,* 256 N.W.2d at 510 ("[T]he police will generally be able to justify an inventory [search], taken to safeguard the contents of the automobile, once the police have lawful custody of the vehicle.").

Because it is the act of impoundment that "gives rise to the need for and justification of the inventory [search]," the threshold inquiry when determining the reasonableness of an inventory search is whether the impoundment of the vehicle was proper. *Goodrich,* 256 N.W.2d at 510. For impoundment to be proper, the state must have an interest in impoundment that outweighs the individual's Fourth Amendment right to be free of unreasonable searches and seizures. *Id.* "If impoundment is not necessary, then the concomitant [inventory] search is unreasonable." *Id.* The State bears the burden to prove that the inventory search exception to the warrant requirement exists in a particular case. *See Ture,* 632 N.W.2d at 627.

Here, the district court concluded that "there were no circumstances then existing which justified seizure of [Gauster's] vehicle." Thus, the court concluded that Wagner should have let Gauster's vehicle remain where it was on the side of the road

because "[i]t was mid-afternoon in August on a rural highway" and "[t]here was no suggestion that [Gauster's] vehicle parked on the shoulder of the road created a hazard." Alternatively, the court concluded that Wagner should have allowed Gauster to arrange for his own tow of the vehicle. Because the court concluded that the State had "established no justification for impoundment of [Gauster's] vehicle," and thus "no justification for the search of it," the court deemed the inventory search a violation of Gauster's Fourth Amendment rights and suppressed the evidence.

The court of appeals reversed the district court's suppression order. *Gauster*, 2007 WL 2917546, at *5. The court first concluded that "because [Gauster] could not demonstrate that his vehicle was insured, it could not be driven by him or anyone else." *Id.* Additionally, the court concluded that Gauster's argument that a police officer must give a driver the opportunity to make his or her own arrangements for his vehicle had been rejected by the U.S. Supreme Court in *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). *Gauster*, 2007 WL 2917546, at *5. The court of appeals concluded that the impounding of Gauster's vehicle was reasonable and thus, his Fourth Amendment rights were not violated by the inventory search. *Id.*

Gauster asserts that impoundment was improper in this case because 1) he was not under arrest; 2) he asked if someone else could come to get the vehicle; and 3) Wagner should have given him the opportunity to arrange for a tow of the vehicle. The State responds that impounding Gauster's vehicle was reasonable because 1) Gauster could not drive the vehicle due to his suspended driver's license; 2) no one else could drive the vehicle because Gauster had no proof that the vehicle was insured; and 3) Wagner had no affirmative duty to offer or allow Gauster to make his own towing arrangements.

To resolve the issue of whether the inventory search of Gauster's vehicle was unreasonable, we must determine whether Wagner had any authority or purpose that justified impounding the vehicle. As stated above, for impoundment to be proper the State must have some legitimate interest in impounding that outweighs the defendant's right to be free from unreasonable searches or seizures. *Goodrich*, 256 N.W.2d at 510. The Supreme Court has stated that the police, in the interests of public safety, have the authority to "remove from the streets vehicles impeding traffic or threatening public safety and convenience." *Opperman*, 428 U.S. at 369, 96 S.Ct. 3092. Additionally, police may impound a vehicle to "protect[ ] the [defendant's] property from theft and the police from claims arising therefrom." *Goodrich*, 256 N.W.2d at 511.

Impoundment of a motor vehicle must also be conducted pursuant to standardized criteria. *Bertine*, 479 U.S. at 375, 107 S.Ct. 738; *Robb*, 605 N.W.2d at 104. In this case, the Otter Tail County Sheriff's Department's policy and procedure manual does not include regulations about when a vehicle may or must be impounded, but the manual does include regulations about when the vehicle may be inventoried. Otter Tail County Sheriff's Department: Enforcement Unit Policy & Procedure Manual § G–100:102 F.2. (2005). The county's policy states that the police should conduct an inventory search of the vehicle when "the vehicle has been lawfully seized or impounded pursuant to the arrest of the driver; after towing the vehicle for violations, or *for related enforcement or safety reasons as defined by state law*"; and "when officers conduct the inventory within the scope of this policy as an administrative procedure." *Id.* § G–100:102 F.2.A (emphasis added). Because

the Otter Tail County procedures provide that when a driver is not ·arrested the police may impound "for violations, or for related enforcement or safety reasons *as defined by state law,*" we look to state law to determine whether impoundment was justified in this case. *Id.* § G–100:102 F.2.A(2)(a) (emphasis added).

*Nature of violations and arrest of the driver*

Wagner testified that he impounded Gauster's vehicle because of Gauster's suspended license and his failure to provide proof of vehicle insurance.[2] These violations are both misdemeanors under Minnesota statutes. Minn.Stat. §§ 171.24, subd. 1, 169.797, subd. 4 (2006). But Wagner testified that at the time he decided to impound Gauster's vehicle, he had not placed Gauster under arrest and was instead going to issue Gauster a citation for the violations.[3] Issuing a citation for these violations is consistent with Minn. R.Crim. P. 6.01, subd. 1(1)(a), which states that an officer

> shall issue citations to persons subject to lawful arrest for misdemeanors, unless it reasonably appears to the officer that arrest or detention is necessary to prevent bodily harm to the accused or an-

other or further criminal conduct, or that there is a substantial likelihood that the accused will fail to respond to a citation.

Given the statute and the criminal rules, impoundment would have had to be authorized on some other ground than the nature of the violations or the arrest of the driver.

*Safety hazard*

█ If the vehicle's location created a safety hazard, Wagner would have been authorized to impound it immediately. Minn.Stat. § 168B.04, subd. 2(b)(1)(ii) (2006). But the district court specifically found that leaving Gauster's vehicle on the side of the county road would not have created a safety hazard. Given that the vehicle was on the shoulder of a rural road in the middle of the afternoon, we conclude the court's finding that Gauster's vehicle did not create a safety hazard was not clearly erroneous.

*Parking violations*

█ Nevertheless, it is a violation of state traffic laws for a person to "stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the

---

**2.** Failure to produce proof of vehicle insurance is a different offense than a failure to have vehicle insurance. *See* Minn.Stat. § 169.797 (2006). While failure to provide proof of insurance is a strict liability crime, Minn.Stat. § 169.791, subd. 2 (2006), failure to have vehicle insurance has an element of scienter and is only a crime if the owner "knows or has reason to know" that the vehicle is not insured. Minn.Stat. § 169.797, subd. 2.

**3.** Further, no Minnesota statute authorizes the police to impound a vehicle merely because the driver's license is suspended. And we made clear in *State v. Askerooth* that "lack of a driver's license, by itself, is not a reasonable basis for" subjecting the driver to a custodial arrest for a minor traffic offense. 681

N.W.2d 353, 365 (Minn.2004); *see also id.* at 373 (R.A. Anderson, J., concurring specially) (stating that Minn. R.Crim. P. 6.01 limitations on full custodial arrests for misdemeanors "have long been enforced through exclusionary rules"). According to Professor LaFave, courts in most jurisdictions hold that when a "driver is only ticketed but cannot himself operate the car because of an expired license, impoundment of the vehicle is improper unless the driver is 'unable to provide for its custody or removal.'" 3 Wayne R. LaFave, *Search and Seizure* § 7.3(c), at 617 (4th ed.2004) (citations omitted). Moreover, after issuing a citation for failure to provide proof of insurance, police typically let drivers drive their vehicles away. *See State v. Reese,* No. A06–321, 2007 WL 1128815, at *6 (Minn.App. Apr.17, 2007).

highway when it is practical to stop, park, or so leave such vehicle off such part of said highway." Minn.Stat. § 169.32(a) (2006). Moreover, an officer is authorized to "move such vehicle, or require the driver or other person in charge of the vehicle to move the same, to a position off the paved or improved or main traveled part of such highway," Minn.Stat. § 169.33(a) (2006), or to impound the vehicle, Minn. Stat. § 168B.04, subd. 2(b)(1)(i). These statutes gave Wagner the authority to impound Gauster's vehicle in furtherance of protecting public safety. The statutes, however, go on to state that the police can impound such a vehicle only if the vehicle has been left unattended, and only 4 hours after a police officer has properly tagged the vehicle. Minn.Stat. §§ 168B.04, subd. 2(b)(1)(i), 169.041, subd. 3 (2006). Because of the 4-hour required waiting period, at the time of the impoundment Wagner was not authorized to impound Gauster's vehicle, nor did he have a legitimate state interest in impounding Gauster's vehicle, based on the vehicle's location on the side of the road. It might be the case that Wagner could have impounded Gauster's vehicle 4 hours later if Gauster left it on the side of the road, but the question in this case is whether, *at the time of the impoundment*, Wagner was authorized to impound Gauster's vehicle. We conclude he was not.

*Caretaking function*

Because Wagner had no justification to impound Gauster's vehicle for his traffic violations or because of any safety concerns, the only possible justification left would have to be based on the police caretaking role of protecting the defendant's property. *Goodrich*, 256 N.W.2d at 511. We have stated that in furtherance of this caretaking function, "[t]he police will generally be able to justify an inventory when it becomes essential for them to take custody of and responsibility for a vehicle due to the incapacity or absence of the owner, driver, or any responsible passenger." *City of St. Paul v. Myles,* 298 Minn. 298, 304, 218 N.W.2d 697, 701 (1974). But in *Goodrich,* we said that if the defendant assumes responsibility for his property, there is no need for the police to take on the responsibility to protect it. 256 N.W.2d at 511.

In *Goodrich,* the defendant pulled into a gas station and was arrested for driving under the influence of alcohol. *Id.* at 508. During the arrest process, the arresting officer discovered that the defendant's vehicle was not registered to the defendant. *Id.* The arresting officer informed the defendant that he was going to tow and impound the vehicle. *Id.* But the officer allowed the defendant to make a telephone call to his brother. *Id.* Shortly thereafter, the defendant's brother and mother arrived on the scene. *Id.* The brother asked the officer if he could take the vehicle instead of having it towed. *Id.* The officer, who had already called the towing service, said no. *Id.* The vehicle was towed, and during an inventory search conducted the next day the officer found controlled substances in the vehicle. *Id.*

The defendant in *Goodrich* moved to suppress the evidence obtained during the inventory search. *Id.* at 509. The district court denied the motion. *Id.* On appeal, we held that the district court erred when it denied the defendant's motion to suppress the evidence obtained during the inventory search. *Id.* at 511. First, we concluded that

[t]he mere fact that the automobile was not registered to defendant, in the absence of reason to believe that defendant was wrongfully in possession of it, does not render impoundment reasonable upon defendant's unrelated arrest for "driving under the influence," and despite defendant's alternative arrangements for disposition of the automobile.

*Id.* Second, we stated that the only remaining reason for impoundment was

> the necessity of protecting the [defendant's] property from theft and the police from claims arising therefrom. But the defendant's assumption of responsibility for his property obviated that necessity in this case. Defendant did not ask to simply leave his locked automobile on the street but arranged to have his mother or brother drive it home.

*Id.* (citation omitted). Because we concluded in *Goodrich* that the state failed to show the impoundment "was a reasonable means of furthering a reasonable state purpose," we held that the search violated the defendant's Fourth Amendment rights, and therefore the evidence obtained during the concomitant inventory search was inadmissible. *Id.*

 In this case, as in *Goodrich*, the only remaining justification to impound Gauster's vehicle at the time of impoundment was to further the police caretaking function of protecting Gauster's property. Because Gauster took responsibility for the vehicle, as did the defendant in *Goodrich*, the need to protect Gauster's vehicle was obviated, leaving no proper purpose for impoundment.

One could distinguish the facts of this case from those in *Goodrich* because in *Goodrich*, the officer had already allowed the defendant to call his brother, and his brother had already arrived on the scene

when the officer refused to allow the brother to take possession of the vehicle. *Id.* at 508. Here, there were no passengers and no other parties on the scene who could take responsibility for Gauster's vehicle. But because Gauster was not under arrest, Gauster himself—like the defendant's brother in *Goodrich*—was available to take custody of the vehicle and make proper arrangements.

While the need for the police to protect the vehicle and its contents is often present when police officers arrest a driver, in this case Gauster was not arrested and therefore never relinquished control of his vehicle and had no need to leave it unattended. Further, the impoundment and towing statutes only authorize impoundment for safekeeping when the person in control of the vehicle is taken into custody. Minn.Stat. § 169.041, subd. 4(12); Minn. Stat. § 168B.04, subd. 2. Because Gauster had at least 4 hours to make the proper arrangements for the vehicle before it could be towed, Minn.Stat. §§ 168B.04, subd. 2(b)(1)(i), 169.041, subd. 3, and because he was available to and capable of making his own arrangements for the vehicle, we conclude that as was the case in *Goodrich*, the police had no legitimate "caretaking" purpose that justified impounding Gauster's vehicle. Therefore, we hold that the district court did not err in concluding that the impoundment was improper because "there were no circumstances then existing which justified seizure of [Gauster's] vehicle."[4]

---

4. Our conclusion is supported by the reasoning of Professor LaFave, who argues that, before impounding a vehicle, an officer should be required "(i) to advise the arrested operator 'that his vehicle will be taken to a police facility or private storage facility for safekeeping unless he directs the officer to dispose of it in some other lawful manner,' and (ii) to comply with any reasonable alternative disposition requested." 3 Wayne R. LaFave, *Search and Seizure* § 7.3(c), at 621 (4th ed.2004) (footnote omitted). LaFave emphasizes that the police should not be expected "to make any other disposition which would be more onerous than having the vehicle brought to the station," but that reasonable requests, such as allowing a passenger to drive the vehicle, leaving the vehicle at the scene if it is lawful to do so, or even, if the vehicle is brought to the station with the arrestee, allowing the arrestee the opportunity to make arrangements for a friend to pick

In making our determination, we recognize that the Supreme Court appears to reject the proposition that, before impounding a vehicle, the police must give a driver the opportunity to make his or her own arrangements for the vehicle. In *Bertine*, the defendant was arrested for driving while intoxicated and his vehicle was impounded and searched. 479 U.S. at 368–69, 107 S.Ct. 738. The Court, in response to the Colorado Supreme Court's observation that the defendant could have been offered the opportunity to make his own arrangements, stated:

> [W]hile giving [the defendant] an opportunity to make alternative arrangements would undoubtedly have been possible, * * * [t]he real question is not what could have been achieved, but whether the Fourth Amendment *requires* such steps. * * * The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means.

*Id.* at 373–74, 107 S.Ct. 738 (internal quotation marks omitted).

While *Bertine* may reject the argument that the Fourth Amendment requires the police to ask an arrested driver if he wants to make alternative arrangements for his vehicle, we conclude that two facts distinguish *Bertine* from this case. First, as Gauster asserts, in *Bertine* the defendant was placed under arrest before his vehicle was impounded. *Bertine*, 479 U.S. at 368, 107 S.Ct. 738. It therefore may have been necessary to do *something* with the vehicle. It does not appear unreasonable for the Supreme Court to have concluded that in such a case, the police should not have

to take time to determine how the arrestee wants to dispose of his vehicle. But Gauster was not arrested and it was therefore not necessary for the police to take his vehicle into custody in the first place.

This distinction is further supported by *State v. Robb*, decided after *Bertine*, in which we affirmed the proposition set forth in *Goodrich* that impoundment is unreasonable when a defendant has made reasonable arrangements for the safeguarding of his property. *State v. Robb*, 605 N.W.2d 96, 104 (Minn.2000). In *Robb*, a driver was arrested on an outstanding body warrant. *Id.* at 99. But because the driver's friend was at the scene and willing to take responsibility for the vehicle, we concluded that there was no legal basis to impound the driver's vehicle. *Id.* at 104. Because in this case the driver himself, Gauster, was available to make arrangements for the vehicle because he was not arrested, it appears that, as in *Goodrich* and *Robb*, at the time of the impoundment there was no legal basis for impounding the vehicle and not allowing Gauster to arrange for his own tow.

■ Moreover Gauster asked Wagner if he could make his own arrangements for his vehicle. This fact further distinguishes the present case from *Bertine*, where the Supreme Court rejected the assertion that the police should have, on their own, offered the defendant the opportunity to make his own arrangements. As in *Goodrich*, where the defendant asked the police if he could make his own arrangements for the vehicle, Gauster affirmatively requested that he be allowed to have a friend

---

up the vehicle. *Id.* at 621–22. LaFave asserts:

> Such alternative means of disposition serve not only to protect the arrestee's possessory and privacy interests in the vehicle but also to relieve the police of continuing responsibility for the car and its contents, and thus

> are to be preferred over impoundment when one such alternative has been requested by a properly-advised arrestee and can reasonably be accomplished under the circumstances.

*Id.* at 622.

drive the vehicle or to get his own tow. Thus, even if under *Bertine* the police are not required to offer a driver the option to make his own vehicle arrangements, under *Goodrich* we conclude that the police still may be under an obligation to permit a driver to make reasonable alternative arrangements when the driver is able to do so and specifically makes a request to do so. We therefore conclude that, in light of the facts of this case—including that Gauster was not placed under arrest and that he asked Wagner if he could make his own vehicle arrangements—the impoundment of Gauster's vehicle was not justified under the Fourth Amendment.

Because we conclude that the impoundment of Gauster's vehicle was not justified, we further conclude that the concomitant inventory search of the vehicle violated Gauster's Fourth Amendment right against unreasonable searches or seizures. We therefore reverse court of appeals and reinstate the district court's order suppressing the evidence obtained during the inventory search of Gauster's vehicle and dismissing the charges against Gauster for lack of probable cause.

## II.

 The state alternatively argues that, even if the inventory search of Gauster's vehicle was unconstitutional, the search of the vehicle's trunk was justified by probable cause under the automobile exception to the warrant requirement because Wagner discovered an open container and a pipe in the passenger compartment of the vehicle. The state did not raise this argument at either the omnibus hearing or on appeal to the court of appeals. We generally will not consider arguments raised for the first time on appeal. *Ferguson v. State,* 645 N.W.2d 437, 448 (Minn.2002). "One purpose of this rule is to encourage the development of a factual basis for claims at the district court level." *Johnson v. State,* 673 N.W.2d 144,

147 (Minn.2004) citing *State v. Grunig,* 660 N.W.2d 134, 137 (Minn.2003). This rule is "not absolute," however, and we "may address an issue in the interests of justice if addressing the issue will not work an unfair surprise on a party." *Id.* (citing *State v. Sorenson,* 441 N.W.2d 455, 457 (Minn. 1989)). But the record must permit us to address such an issue. Minn. R.Crim. P. 29.04, subd. 6; *see also Grunig,* 660 N.W.2d at 136.

 We conclude that the State waived the automobile exception claim by failing to raise it at the district court. Moreover, the record here is not sufficiently developed to allow us to resolve this issue even if we chose to address it. Under the automobile exception to the warrant requirement, "[w]hen probable cause exists to believe that a vehicle contains contraband, the Fourth Amendment permits the police to search the vehicle without a warrant." *State v. Flowers,* 734 N.W.2d 239, 248 (Minn.2007) (citing *Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)). The scope of a warrantless search under the automobile exception is " 'defined by the object of the search and the places in which there is probable cause to believe [the object] may be found.' " *California v. Acevedo,* 500 U.S. 565, 579–80, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (quoting *United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)); *see also Ross,* 456 U.S. at 825, 102 S.Ct. 2157 (stating that the scope of a warrantless automobile search extends as far as "a magistrate could legitimately authorize by warrant"). Thus, whether probable cause existed to search the trunk of Gauster's vehicle depends in part on whether Wagner discovered the pipe in the passenger compartment of the vehicle before or after he searched the trunk.

Wagner testified at the omnibus hearing that he discovered the pipe during his initial search of the passenger compartment of the vehicle and that he then searched the trunk. But Gauster testified that during the inventory search, Wagner first found bottles in Gauster's passenger compartment, then searched the trunk—where he found what he believed to be methamphetamine—and *then* returned to the passenger compartment of the vehicle and found the pipe under Gauster's front seat. Because the record was not developed on this fact issue, and because the district court did not make a finding of fact regarding when the pipe was found, we conclude that the State cannot now raise the automobile exception argument. We reach this conclusion because the record was not sufficiently developed for us to decide whether the State met its burden of proving that the exception applied in this case. For all the foregoing reasons we hold that the State waived its argument that the search of Gauster's vehicle was justified under the automobile exception to the warrant requirement.

Reversed and remanded to the district court for further proceedings consistent with this opinion.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

DIETZEN, J., took no part in the consideration or decision of this case.