*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1976**

State of Minnesota,
Respondent,

vs.

Zacarias Lopez Sarmiento,
Appellant.

**Filed November 24, 2014
Affirmed
Rodenberg, Judge**

Dakota County District Court
File No. 19HA-CR-11-4038

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Phillip D. Prokopowicz, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Worke, Judge; and Schellhas, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant Zacarias Lopez Sarmiento challenges the district court's denial of his motion to suppress methamphetamine seized from him, arguing that the district court

erred in reopening the omnibus hearing and that appellant's arrest was unlawful. We affirm.

## FACTS

Special Agent Christopher Hage of the Drug Enforcement Agency (DEA) investigated the De la Herran drug trafficking organization (DTO) beginning in 2011. Agent Hage learned that the DTO had been transporting controlled substances from southern California to Minnesota using modified "load cars"—cars with specially built hidden compartments. In June 2011, Agent Hage confirmed the use of such cars by the DTO when he observed suspects associated with the DTO drive a Volkswagen sedan into a windowless garage. Agent Hage approached the garage and heard hammering and other noises consistent with tools being used on a vehicle. When the suspects emerged from the garage, they were carrying bags which they attempted to transport to a second vehicle. DEA Agents stopped and detained the suspects, obtained a search warrant, and searched the bags which contained almost 13 pounds of methamphetamine. From his investigation, Agent Hage concluded that the drugs had been secreted in the Volkswagen.

The DEA continued its investigation of the DTO and learned that Jose De la Herran and his wife, Emma Lopez, were its leaders. A trailer home in Arden Hills was determined to be the DTO's "control center." On November 10, 2011, DEA agents, including Agent Hage, were surveilling the Arden Hills trailer. The agents saw appellant, De la Herran, and Lopez exit the trailer home. Agents followed appellant, who left the trailer in a white Jeep. He drove to West St. Paul, followed by De la Herran and Lopez. DEA agents observed the vehicles being driven in a manner indicating "counter

2

surveillance" maneuvers—making U-turns and driving fast through parking lots in an apparent effort by the drivers to detect whether their vehicles were being followed.

Eventually, and still observed by DEA agents, the vehicles arrived at an apartment complex in West St. Paul. Appellant got out of the white Jeep and attempted to start a Volkswagen parked in the apartment's parking lot. While appellant attempted to start the Volkswagen, DEA Agents observed De la Herran and Lopez drive around the block. The Agents believed this to be another counter-surveillance measure. Appellant had difficulty starting the Volkswagen. He was observed making a phone call. De la Herran and Lopez returned to the lot and conferred with appellant. Appellant left in the white Jeep and returned with jumper cables. Agent Hage suspected the reason the Volkswagen did not start right away was because it had likely been sitting in the parking lot for a period of time to "cool off"—or remain inactive in order to detect any suspicion concerning the vehicle.

Appellant got the Volkswagen started and agents observed him drive it into a windowless garage, where the garage door was then closed. Agents approached the garage and could hear pounding and other sounds consistent with tools being used on the vehicle. These noises continued for approximately one hour. Appellant then emerged from the garage carrying a package, which he placed in the white Jeep. Appellant drove off in the white Jeep, with De la Herran and Lopez again following him. The two vehicles were again driven as if using counter-surveillance measures.

At this point, Agent Hage believed he had enough probable cause to arrest appellant, De la Herran, and Lopez because the events he observed closely mimicked the

3

events of June 2011, which had resulted in the seizure of methamphetamine. However, to avoid prematurely exposing the DEA's investigation into the DTO, Agent Hage contacted Officer Forsberg of the West St. Paul Police Department to conduct the arrest. Agent Hage instructed Officer Forsberg to attempt to find independent probable cause to make the stop, but, if he could not do so, Agent Hage ordered him to nevertheless make the stop. Officer Forsberg was given a DEA radio and informed generally about the operation.

As instructed, Officer Forsberg followed the white Jeep on Highway 52 to detect possible violations of the law. Focusing on the lower half of the vehicle, Officer Forsberg noticed expired license plate tabs. He initiated a traffic stop. Unnoticed by Officer Forsberg, the Jeep displayed a 21-day temporary license tag in the rear window. Officer Forsberg testified that the white Jeep stopped off the highway in a "no parking" zone. Officer Forsberg requested appellant's driver's license and appellant handed Officer Forsberg a Mexican driver's license and other identification. Officer Forsberg testified that he believed his training required him to arrest a driver with a license from a different country if that driver could not be found in the law enforcement computer, because "there is no way for me to verify that that is an actual license." Pursuant to this policy, Officer Forsberg arrested appellant. After he had arrested appellant, Officer Forsberg noticed the temporary license in the Jeep's back window.

Because the white Jeep was stopped in a "no parking" zone, and according to department policy, Officer Forsberg conducted an inventory search of the vehicle and arranged for it to be towed. The inventory search revealed approximately 12 pounds of

4

methamphetamine. Appellant was charged with two counts of first-degree controlled substances crime, sale and possession in violation of Minn. Stat. § 152.021, subd. 1(1), 2(1).

Appellant moved to suppress the evidence seized as a result of the search. At the omnibus hearing, he challenged both the legality of the stop and the validity of the vehicle search. Appellant argued that the expired tabs on the white Jeep were the only reason Officer Forsberg stopped him. Appellant argued that, as soon as Officer Forsberg noticed the 21-day temporary license, "the reason for the traffic stop dissipated." For this reason, appellant argued, the traffic stop was illegal and therefore the subsequent arrest and inventory search were also illegal. At the omnibus hearing, Officer Forsberg was the only witness called to testify.

Shortly after the close of the first omnibus hearing, respondent moved to reopen the omnibus hearing to submit additional testimony from Agent Hage. Respondent argued that Special Agent Hage's testimony was necessary to provide evidence that Officer Forsberg arrested appellant based on probable cause under the collective knowledge doctrine. Respondent argued that the state was not put on notice that appellant would be disputing that Officer Forsberg arrested appellant based on the collective knowledge of the DEA. Appellant objected to reopening the omnibus hearing.

The district court granted the motion to reopen the omnibus hearing, concluding that doing so was in the interest of "full and fair fact finding and judicial economy." During the reopened omnibus hearing, Agent Hage was the only witness to testify.

The district court denied appellant's motions, finding Agent Hage's testimony credible. The district court concluded that, pursuant to the collective knowledge doctrine, Officer Forsberg had probable cause to arrest appellant based on the DEA investigation into the DTO. This knowledge "could be imputed to Officer Forsberg" and therefore appellant's arrest was proper.

The district court further concluded that the warrantless inventory search of the Jeep was authorized by an exception to the Fourth Amendment warrant requirement and was not an unlawful expansion of a traffic stop, but rather a "validly conducted search prior to towing the vehicle."

Appellant was convicted of both counts of first-degree controlled substances crimes. This appeal followed.

## DECISION

## I.

First, appellant claims that the district court erred in reopening the omnibus hearing. While the Minnesota Rules of Criminal Procedure do not expressly provide for a motion to reopen an omnibus hearing, the Minnesota Supreme Court has approved of reopening omnibus hearings when it would give the parties a "full and fair opportunity" to meet their burdens of proof. *State v. Needham*, 488 N.W.2d 294, 297 (Minn. 1992), *State v. Papadakis*, 643 N.W.2d 349, 356 (Minn. App. 2002). The supreme court has also considered reopening an omnibus hearing preferable in situations where denying a motion to reopen would entail the "time, trouble and expense of an appeal." *State v. Montjoy*, 366 N.W.2d 103, 107 (Minn. 1985). The district court has the "inherent

authority" to grant or deny a motion to reopen an omnibus hearing in its discretion, and we review a district court's decision allowing reopening for an abuse of that discretion. *See Papadakis*, 643 N.W.2d at 356-357 (holding that a motion to reopen an omnibus hearing is within the district court's discretion, and its decision to deny appellant's motion was not in error in that case); *see also State v. Menth*, No. !05-1547, 2006 WL 1984730, at *2 (Minn. App. July 18, 2006) (stating that "we review a district court's decision not to reopen an omnibus hearing under an abuse-of-discretion standard").

Here, respondent timely moved to reopen the omnibus hearing. While it is true that respondent may have been able to discern from appellant's motion papers that Agent Hage's testimony would be needed to argue that Officer Forsberg's stop and arrest were proper, *Needham* requires that a pretrial motion to suppress specify, *with particularity*, the grounds advanced for suppression. 488 N.W.2d at 296. Appellant's motion papers did not expressly challenge Officer Forsberg's reliance on the collective knowledge of the DEA investigation of the DTO. The district court, in its discretion, concluded that reopening the omnibus hearing was permissible under the circumstances. And the district court is, in a circumstance such as this, best situated to determine the fairness of reopening the omnibus record. The district court acted within its discretion in allowing the omnibus hearing to be reopened.

## II.

Appellant argues that, because Officer Forsberg's stop of appellant's vehicle and appellant's subsequent arrest were impermissible, the resulting evidence must be suppressed. Respondent counters that, because Officer Forsberg acted on the collective

7

knowledge of the police, the stop and arrest were proper. On appeal from a motion to suppress, the district court's factual findings are reviewed for clear error and its legal determinations are reviewed de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

The collective knowledge doctrine allows police officers to act on the knowledge of the entire police force rather than considering the knowledge of each officer individually. *State v. Conaway*, 319 N.W.2d 35, 40 (Minn. 1982). Under the doctrine, the "*entire* knowledge of the police force is pooled and imputed to the arresting officer for the purpose of determining if sufficient probable cause [or reasonable suspicion] exists." *Id.* Generally, there must be some level of communication between the police force, although "[a]ctual communication of information to the officer conducting the search [or arrest] is unnecessary." *State v. Lemieux*, 726 N.W.2d 783, 789 (Minn. 2007).

Here, the DEA expressly requested the assistance of the local police to make the arrest in order to avoid compromising the DEA's ongoing investigation. Special Agent Hage generally informed Officer Forsberg of the operation and that the investigation into the DTO was ongoing. Officer Forsberg was asked to attempt to find independent probable cause to arrest. However, based on the probable cause that the DEA's investigation had developed, Officer Forsberg was told to stop and arrest appellant. Additionally, the DEA equipped Officer Forsberg with a DEA radio, which allowed Officer Forsberg to listen into the DEA conversation concerning appellant and the investigation while Officer Forsberg followed appellant on the highway. This level of communication was sufficient for the application of the collective knowledge doctrine.

The decision to arrest was made by DEA Special Agent Hage, despite the actual arrest having been effectuated by Officer Forsberg.

The question then becomes whether the collective knowledge of the DEA was sufficient to justify the stop and the arrest of appellant. The Fourth Amendment to the United States Constitution and Article I, Section 10 of the Minnesota Constitution provide for the "right of the people to be secure in their persons, houses, papers, and effects" against "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. A warrantless arrest requires the officer to have probable cause to believe that a crime was committed by the person to be arrested. *See In re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn. 1997) (explaining the standard for probable cause to arrest where officers did not have a warrant to arrest). "A police officer with probable cause to arrest the driver of a vehicle may stop the vehicle to make the arrest." *State v. Dickey*, 827 N.W.2d 792, 798 (Minn. App. 2013).

Officer Forsberg, imputed with the knowledge of the DEA, had probable cause to arrest appellant. Over the course of five months, the DEA had extensively investigated the DTO and its associates. On the day of the arrest, the DEA had observed appellant with De la Herran and Lopez, the two people the DEA knew to be the leaders of the DTO. And while "mere proximity to criminal activity" cannot establish reasonable suspicion or probable cause, Officer Forsberg and the DEA acted on much more than appellant's proximity to criminal activity. *State v. Ortega*, 770 N.W.2d 145, 150 (Minn. 2009). They saw appellant leave a trailer in Arden Hills they had determined was the "control center" of the DTO. They observed appellant start a vehicle that had been left in

9

a parking lot, apparently to "cool off," and drive it into a windowless garage. There, agents heard noises consistent with someone modifying a vehicle, in a scenario startlingly similar to an arrest five months earlier involving another member of the DTO in which 13 pounds of methamphetamine was seized. Agents also saw appellant leave the garage, carrying a package similar to that containing methamphetamine in the earlier arrest, all while other agents observed De la Herran and Lopez drive around the windowless garage in a manner suggesting that De la Herran and Lopez were watching for law enforcement.

The overwhelming amount of suspicious activity engaged in by appellant and the similarity of that activity to earlier criminal enterprises of the DTO amounted to probable cause to believe that appellant was engaged in transporting illegal drugs for the DTO. Because Officer Forsberg, imputed with the knowledge of the DEA, had enough facts to "entertain an honest and strong suspicion" that appellant committed a crime, he had probable cause to arrest appellant. The stop and arrest of appellant were therefore permissible.

**III.**

After appellant was stopped and arrested, the Jeep he was driving was impounded and subjected to an inventory search. Appellant challenges the lawfulness of that inventory search. The Fourth Amendment to the United States Constitution and Article I, Section 10 of the Minnesota Constitution protect the right of the people to be free from unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches are presumptively unreasonable. *Gauster*, 752 N.W.2d at 502. However, there are well-defined exceptions to the warrant requirement, one of which is an inventory

10

search. *Id.* Whether an inventory search is reasonable turns on whether the underlying impoundment was reasonable. *State v. Rohde*, 852 N.W.2d 260, 264 (Minn. 2014). When a driver is arrested, the Minnesota Supreme Court has recognized that it may be necessary for the police to take responsibility for the vehicle through impoundment. *Id.* at 266 (citing *Gauster*, 752 N.W.2d at 507). "[C]ases in which the driver of a vehicle is arrested are fundamentally different from cases in which the driver remains free." *Id.*

Here, and as discussed above, Officer Forsberg had lawfully arrested appellant. Appellant's arrest and the location of the Jeep in a "no parking" zone*, see* Minn. Stat. § 168B.04, subd. 2(b)(1)(i), reasonably required Officer Forsberg to impound the vehicle. Following department policy, and upon the impoundment of the vehicle, Officer Forsberg conducted an inventory search. Under the facts here, that inventory search did not offend appellant's Fourth Amendment rights.

Moreover, and even if we were to conclude that the impoundment was not reasonable, Officer Forsberg would have been amply justified in searching the vehicle pursuant to yet another exception to the warrant requirement—the automobile exception to the Fourth Amendment. Under the automobile exception, officers may search a vehicle when they have probable cause to believe that the vehicle contains contraband. *Gauster*, 752 N.W.2d at 508. Probable cause requires an officer "to have a reasonable belief that incriminating evidence is in a certain location." *G.M.*, 560 N.W.2d at 695.

Here, the police officers collectively had probable cause to believe that the Jeep contained contraband. The DEA, as a result of its extensive investigation of the DTO, had a reasonable belief that illegal drugs were likely in the package that appellant had

11

carried from the windowless garage to the Jeep.  The facts in the record are sufficient to conclude that Officer Forsberg, imputed with the knowledge from the DEA, had probable cause to believe that there were illegal drugs in appellant's vehicle at the time of the stop. Therefore, Officer Forsberg's search of appellant's vehicle was also justified by the automobile exception to the Fourth Amendment warrant requirement.

**Affirmed.**