*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1854**

State of Minnesota,
Respondent,

vs.

Demarcius Maurice Payton,
Appellant.

**Filed November 18, 2024
Affirmed
Larson, Judge**

Ramsey County District Court
File No. 62-CR-21-7047

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Lyndsey M. Olson, St. Paul City Attorney, Maria DeWolf, Assistant City Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Worke, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

Appellant Demarcius Maurice Payton challenges his conviction for third-degree test refusal on the basis that the district court erroneously denied his motion to suppress evidence obtained from a traffic stop. *See* Minn. Stat. § 169A.20, subd. 2(2) (2020). On

appeal, Payton argues the district court clearly erred when it found his vehicle crossed a white-dashed centerline without signaling, giving a police officer reasonable, articulable suspicion to stop his vehicle because he violated a traffic law. Because the district court's findings are not clearly erroneous, we conclude the district court correctly denied the motion to suppress and affirm.

## FACTS

The following facts were elicited at a hearing on Payton's motion to suppress. On December 13, 2021, at 6:15 p.m., a St. Paul police officer responded to a report that a black sport utility vehicle was blocking the entrance to a store. The report indicated that an individual was seated in the driver's seat and asleep or unconscious. When the officer arrived, he noticed an unoccupied vehicle with a similar description in a parking space in the store's parking lot. The officer "cleared the call," but remained at the scene to observe the vehicle. The vehicle eventually left the parking lot, and the officer followed the vehicle with his dash camera recording. The vehicle traveled south on Hamline Avenue, which has two southbound lanes of traffic separated by a white-dashed centerline. While following the vehicle, the officer observed the driver swerve 6-12 inches over the white-dashed centerline, without signaling, for 20-30 feet before recentering the vehicle in the appropriate lane. Based on his observation, the officer conducted a traffic stop.

During the traffic stop, the officer identified Payton as the driver, noticed signs of impairment, directed Payton to perform field sobriety tests, and arrested Payton for driving under the influence of a controlled substance. The officer secured a search warrant for a

blood or urine test. After the officer read Payton the search warrant and informed Payton that refusing to submit to testing was a crime, Payton refused to submit to testing.

Respondent State of Minnesota charged Payton with three counts: (1) third-degree driving while impaired (refusal to test), pursuant to Minn. Stat. § 169A.20, subd. 2(2); (2) fourth-degree driving while impaired (operating a motor vehicle under the influence of a controlled substance), pursuant to Minn. Stat. 169A.20, subd. 1(2) (2020); and (3) driving after revocation, pursuant to Minn. Stat. § 171.24, subd. 2 (2020). Payton moved to suppress the evidence obtained from the traffic stop, arguing the officer lacked reasonable, articulable suspicion to perform the traffic stop and the expansion of the stop was unreasonable. The district court denied the motion to suppress.

The parties agreed to a stipulated-evidence trial under Minn. R. Crim. P. 26.01, subd. 4, preserving Payton's right to appeal the district court's decision to deny the motion to suppress. The district court adjudicated Payton guilty of third-degree driving while impaired (refusal to test), dismissed the remaining counts, and imposed a probationary sentence.

Payton appeals.

**DECISION**

Payton challenges the district court's decision to deny his motion to suppress the evidence obtained from the traffic stop. Specifically, Payton contends the district court clearly erred when it found the officer credibly testified that Payton crossed the white-dashed centerline without signaling. *See* Minn. Stat. § 169.18, subd. 7(1) (2020).

When reviewing a district court's decision to deny a pre-trial suppression motion, we review the district court's factual findings for clear error and legal determinations de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). We "will not conclude that a factfinder clearly erred unless, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted); *State v. Thompson*, 988 N.W.2d 149, 158 (Minn. App. 2023) (applying *Kenney*), *rev. denied* (Minn. June 20, 2023). When applying the clear-error standard, we fully perform our duty when we have "fairly considered all the evidence and . . . determined that the evidence reasonably supports the decision." *Kenney*, 963 N.W.2d at 222.

The United States and Minnesota Constitutions guarantee individuals the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A police officer may, however, initiate a limited investigatory stop without a warrant if the officer has a reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). A reasonable, articulable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. These facts are judged by an objective standard. *Id*. Even a minor traffic-law violation can establish a particularized, objective basis for an investigatory stop. *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997).

Here, the officer testified that he initiated a traffic stop because he observed Payton swerve 6-12 inches over the white-dashed centerline, without signaling, for 20-30 feet

before recentering the vehicle in the appropriate lane. The officer indicated his belief that this conduct violated Minn. Stat. § 169.18, subd. 7(1), which states, "When any roadway has been divided into two [lanes] . . . a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." The officer testified that he "clear[ly]" observed the violation and indicated exactly when the violation occurred in the dash-camera video. The district court found the officer's testimony credible, and we defer to the district court's credibility determinations.[1] *See State v. Smith*, 448 N.W.2d 550, 555-56 (Minn. App. 1989), *rev. denied* (Minn. Dec. 29, 1989). Based on this evidence, the district court found that Payton's vehicle "swerve[d] and cross[ed] the dashed white line separating the two lanes without signaling." We conclude that the evidence amply supports the district court's finding that Payton crossed the white-dashed centerline without signaling.

Payton disagrees, arguing the district court clearly erred when it found he crossed the white-dashed centerline. Payton relies on his assertion that the dash-camera video does not support the officer's testimony. But contrary to Payton's argument, though dark and poor quality, the dash-camera video does not contradict the officer's testimony. While the

---

[1] Payton challenges the district court's credibility determination because he presented evidence that the officer had previously been demoted and had two prior reprimands for improper procedures. But Payton presented this evidence to the district court and, despite that evidence, the district court found the officer credible. "Because the weight and believability of witness testimony is an issue for the district court, we defer to [the district] court's credibility determinations." *State v. Miller*, 659 N.W.2d 275, 279 (Minn. App. 2003).

white-dashed centerline does not appear in the dash-camera video, the dash-camera video plainly captures Payton's vehicle veering slightly to the right at the time the officer testified that Payton crossed the white-dashed centerline. Although not dispositive, the dash-camera video bolsters the officer's testimony that a traffic violation occurred.

For these reasons, we conclude the district court did not clearly err when it found Payton crossed the white-dashed centerline without signaling and, thereby, violated Minn. Stat. § 169.18, subd. 7(1). As such, the district court correctly determined the officer had the requisite particularized and objective basis for conducting the traffic stop and, therefore, the investigatory stop was supported by reasonable, articulable suspicion. *See George*, 557 N.W.2d at 578. We, therefore, affirm the district court's decision to deny Payton's motion to suppress.

**Affirmed.**