STATE of Minnesota, Respondent,

v.

**Erica Ann ROHDE, Appellant.**

No. A13–0610.

Court of Appeals of Minnesota.

Dec. 2, 2013.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Anthony C. Palumbo, Anoka County Attorney, C. Donald LeBaron, Assistant County Attorney, Anoka, MN, for respondent.

Adam T. Johnson, Meshbesher & Associates, P.A., Minneapolis, MN, for appellant.

Considered and decided by HOOTEN, Presiding Judge; SCHELLHAS, Judge; and STAUBER, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges the district court's denial of her motion to suppress, arguing that the inventory search of her vehicle was unconstitutional because (1) the police had no legitimate reason to impound her vehicle and (2) the search was pretextual. We affirm.

## FACTS

While working undercover on the afternoon of September 11, 2012, based on information received from Blaine Police Officer Hawley, Blaine Police Officer Koch conducted surveillance of a residence where individuals were suspected of possible drug trafficking. Officer Hawley told Officer Koch that an individual might be driving a Monte Carlo with multiple people inside, and Officer Hawley provided a license-plate number. Shortly after 4:10 p.m., Officer Koch saw a vehicle that matched the description leave the driveway of the residence, but the license plate did not match the number provided. Officer Koch ran the vehicle's license plate through his mobile data unit and learned that the license registration and the registered owner's driver's license were revoked. The registered owner was appellant Erica Rohde. Officer Koch also learned from his mobile data unit that, when Rohde was arrested in March 2011, she was in possession of drugs.

Officer Koch suspected that Rohde's vehicle might contain controlled substances; contacted Blaine Police Officer Champagne, a uniformed officer; and requested that he stop the vehicle. Officer Champagne followed the vehicle, observed it

commit a signaling violation, confirmed that the driver matched the description provided by Officer Koch, and initiated a stop. The vehicle stopped on a two-way residential street and did not impede traffic, violate any parking laws, or block access to any business or residence on the street. After identifying Rohde by her Minnesota driver's license, Officer Champagne told her that he stopped her vehicle because of the signaling violation and revoked license plates. Rohde stated that she did not have insurance on the vehicle. Officer Champagne told Rohde that he probably would tow the vehicle and that Blaine police department policy required him to conduct an inventory search of it.

As Rohde stepped out of her vehicle, she asked Officer Champagne whether she was under arrest, and he responded that she was "technically" under arrest because she was not free to leave. Within the next few minutes, Officer Champagne asked Rohde to sit in the back of his squad car, where Rohde asked Officer Champagne whether her mother could come to the scene and pick her up. Officer Champagne said she could and provided Rohde with his cell phone so that she could call her mother. Rohde was unable to reach her mother and appeared concerned about picking up her child from preschool. At no time did she ask whether she could arrange to have her vehicle towed.

Officer Koch arrived at the scene, began an inventory search of the vehicle, and opened a purse located on the passenger seat that had a black zipper bag inside. That bag contained two small plastic bags of a substance that Officer Koch suspected was methamphetamine. Officer Koch also found two glass pipes used to smoke methamphetamine. Respondent State of Minnesota charged Rohde with one count of fifth-degree controlled-substance crime, a felony, and one count of possession of drug paraphernalia, a petty misdemeanor. At a contested omnibus hearing, Rohde moved to suppress the physical evidence found during the search of her vehicle. The district court denied the motion. After a stipulated-facts trial, the court found Rohde guilty of both counts.

This appeal follows.

## ISSUES

I. Were the impoundment and inventory search of Rohde's vehicle authorized by law?

II. Was the search of Rohde's vehicle consistent with standard procedures?

## ANALYSIS

 "[W]hen reviewing a pre-trial order suppressing evidence where the facts are not in dispute and the trial court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed." *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992). We rely on the facts found by the district court unless they are clearly erroneous. *State v. Jordan*, 742 N.W.2d 149, 152 (Minn.2007).

## I. The impoundment and inventory search of Rohde's vehicle were authorized by law.

 Rohde argues that, except for the city impoundment policy, the police had no lawful reason to tow her car and impound it and therefore the inventory search of her vehicle was unconstitutional. The federal and state constitutions guarantee the right of persons not to be subjected to "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches are presumed to be unreasonable. *State*

*v. Munson*, 594 N.W.2d 128, 135 (Minn. 1999). Inventory searches are a "well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). "Under the inventory exception, police need neither probable cause nor a warrant to search a vehicle." *State v. Holmes*, 569 N.W.2d 181, 186 (Minn.1997). The inventory exception allows police to search a lawfully impounded vehicle if they search according to standard procedures and, at least in part, for the purpose of obtaining an inventory of the vehicle's contents. *State v. Ture*, 632 N.W.2d 621, 628 (Minn. 2001). "When performing inventory searches, the police fulfill administrative or caretaking functions that protect the vehicle owner's property and also protect the police from claims of lost or damaged property." *Id.* (quotation omitted). "The State bears the burden to prove that the inventory search exception to the warrant requirement exists in a particular case." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn.2008).

To determine whether an inventory search is reasonable, the threshold inquiry is the propriety of the impoundment itself, "since the act of impoundment gives rise to the need for and justification of the inventory. If impoundment is not necessary, then the concomitant search is unreasonable." *State v. Goodrich*, 256 N.W.2d 506, 510 (Minn.1977). "For impoundment to be proper, the state must have an interest in impoundment that outweighs the individual's Fourth Amendment right to be free of unreasonable searches and seizures." *Gauster*, 752 N.W.2d at 502. In *Gauster*, the Minnesota Supreme Court articulated four bases which may justify impoundment of a vehicle in Minnesota. *Id.* at 504–05. Impoundment is justified (1) based on the nature of violations

and arrest of the driver, (2) when the vehicle is a safety hazard, (3) when the vehicle violates parking laws, or (4) pursuant to the police's caretaking function. *Id.*

Rohde concedes that, when the police stopped her, her vehicle's registration and license plates were revoked and the vehicle was uninsured. We conclude the impoundment of the vehicle was lawful because the vehicle could not remain on the public roadway with revoked license plates and without insurance.

### A. Revoked vehicle registration and license plates

Under Minnesota law, to operate, drive, or park a motor vehicle on any highway, the vehicle must be properly registered and have plates confirming its valid registration. Minn.Stat. § 169.79, subd. 1 (2012). "[H]ighway" is defined under Minn.Stat. § 169.011, subd. 81 (2012), as "the entire width between boundary lines of any way or place when any part thereof is open to the use of the public, as a matter of right, for the purposes of vehicular traffic." Under the statutory definition, Rohde's vehicle was located on a highway when Officer Champagne stopped her. Rohde's vehicle could not lawfully remain parked on the roadway because it was not properly registered and its plates were revoked. *See* Minn.Stat. § 169.79, subd. 1. Accordingly, because Rohde's vehicle was not properly registered, she could not park it on the roadway for four hours before the police could impound it. *See* Minn.Stat. § 168B.04, subd. 2(b)(1)(i) (2012) (providing for impoundment of a vehicle four hours after it has been tagged by a peace officer).

A 1977 Minnesota Attorney General opinion outlines the rationale for police impoundment of a vehicle when its registration has been revoked:

[A] vehicle which has had its registration revoked is not entitled to use or be operated on the public highways. Minn. Stat. § 168.09, subd. 1 (1976). In the past, the definition of the term "use" in this statute has been held to include a technical prohibition against parking an unregistered vehicle on the public highway. *See* Op. Atty. Gen. 632d, March 4, 1960 .... Under the circumstances presented therefore, *the vehicle might not lawfully be left where it is stopped, nor driven by the owner elsewhere. It may thus be appropriate for law enforcement authorities to seize the vehicle for the purposes of preventing further violation of law; and also to provide for the safety of the vehicle and its contents while in police custody.*

Op. Att'y Gen. 494B–5, 1977 WL 36284, at *2 (Dec. 12, 1977) (emphasis added). While the Attorney General's opinion is only advisory and is 35 years old, its reasoning is persuasive.

Here, Rohde's vehicle registration and license plates were revoked and the vehicle therefore could not be lawfully operated, driven, or parked on the roadway where Officer Champagne stopped Rohde.

### B. Uninsured vehicle

Rohde volunteered to Officer Champagne that the vehicle was not insured. But she argues that police were not justified in impounding her vehicle, relying on *Gauster.* In *Gauster,* after the sheriff learned that Gauster's driver's license was suspended and Gauster was unable to provide proof of insurance, the sheriff informed Gauster that his vehicle would be towed. 752 N.W.2d at 499–500. Before the sheriff began an inventory search of the vehicle, Gauster asked the sheriff whether he could have the vehicle towed, and the sheriff refused. *Id.* at 500. The district court suppressed the evidence found in the vehicle during the inventory search, and the supreme court affirmed, holding that the impoundment did not invoke any of the police's caretaking functions because Gauster was able to make reasonable alternative arrangements for the tow and specifically requested to do so. *Id.* at 501, 506–08.

Rohde cites *Gauster* as support for her argument that the police were not authorized to impound and tow her car. Rohde's reliance on *Gauster* is misplaced for two reasons. First, based on the distinguishing facts, nothing prevented Gauster's vehicle from remaining temporarily on the roadway while the defendant made his own arrangements for a tow. *Gauster,* 752 N.W.2d at 498–509. Second, Gauster's vehicle registration and plates were not revoked, and the sheriff had no definitive information that the vehicle was uninsured; the sheriff knew only that Gauster was unable to provide *proof* of insurance. *Id.* at 499–500. Here, Rohde told police that her vehicle was uninsured; it is a crime for a vehicle to be on a public road when it is not insured. Minn.Stat. § 65B.48, subd. 1 (2012); Minn.Stat. § 169.797, subd. 2 (2012). Because Rohde's vehicle was uninsured, the police were justified in impounding it immediately, and the inventory search was properly conducted to safeguard Rohde's property and to protect the police from liability for her belongings while the vehicle was in police custody.

### C. The city's written impoundment policy authorized the police to impound the vehicle.

Blaine Police Department General Order 312.0 addresses vehicle impoundment. The "purpose" section of the order provides that "[a]uthority to impound motor vehicles is given by Minnesota Statute Section 169.32, 169.33, 169.041, 168B,

169.47 and Blaine Ordinance 19–35." General Order 312.01, paragraph A, provides that "[m]otor vehicles *shall* be impounded under the following circumstances: ... 10. The motor vehicle has been stopped on a public highway, street, or [ ] road and it is determined that the driver or owner does not have [ ] liability insurance pursuant to Minnesota Statute 169.797." Paragraph C permits "a qualified driver to remove the vehicle from the scene" when the driver or owner of a vehicle is taken into custody and a qualified driver is immediately or " 'reasonably' " available at the request of the driver or owner. General Order 312.0 requires police to conduct an inventory search of every impounded vehicle and permits an inventory of the trunk, glove box, compartments, and all locked or unlocked containers within the vehicle. The order also requires the person performing the search to note on a "tow sheet" all items observed during the course of the inventory.

We conclude that the police department's written impoundment policy lawfully authorized the impoundment of Rohde's vehicle because of the nature of her offenses.

### D. The inventory search was authorized because the impoundment was lawful.

"The inventory exception, in turn, permits the police to search a vehicle provided they (1) follow standard procedures in carrying out the search and (2) perform the search, at least in part, for the purpose of obtaining an inventory and not for the sole purpose of investigation." *Ture*, 632 N.W.2d at 628; *see also Goodrich*, 256 N.W.2d at 510 (noting that the reasonableness of inventory search depends on propriety of impoundment). Because the impoundment of Rohde's vehicle was lawful, the inventory-search exception

permitted the police to search the impounded vehicle according to standard procedures and, at least in part, for the purpose of obtaining an inventory of the vehicle's contents and not for the sole purpose of investigation. The police fulfilled administrative or caretaking functions that protected Rohde's property and also protected the police from claims of lost or damaged property. We conclude that the inventory search was lawful.

### E. In the absence of her inquiry, the police did not have a duty to inform Rohde that she could make arrangements to have her vehicle towed herself.

The Fourth Amendment does not require the police to give a driver the opportunity to make alternative arrangements if the driver's car is to be towed. *Bertine*, 479 U.S. at 372–73, 107 S.Ct. at 742. But "police still may be under an obligation to permit a driver to make reasonable alternative arrangements when the driver is able to do so and specifically makes a request to do so." *Gauster*, 752 N.W.2d at 508. Although Rohde could have made her own arrangements to tow her vehicle because she was not under arrest, she did not request to do so, and the police had no duty to inform her of the right to do so.

### II. The inventory search of Rohde's vehicle was consistent with standard procedures and was not pretextual.

An inventory search is proper when "police carried out the search in accordance with standard procedures in the local police department." *Holmes*, 569 N.W.2d at 187 (emphasis omitted). The existence of and compliance with standard inventory procedures "may be established through testimony." *Ture*, 632 N.W.2d at

628. "[I]f there is an objective legal basis for an arrest or search, the arrest or search is lawful even if the officer making the arrest or conducting the search based his or her action on the wrong ground or had an improper motive." *State v. Everett,* 472 N.W.2d 864, 867 (Minn.1991). "The police will generally be able to justify an inventory, taken to safeguard the contents of the automobile, once the police have lawful custody of the vehicle." *Goodrich,* 256 N.W.2d at 510.

Rohde maintains that, even if the inventory search was lawful, "the search still fails under constitutional scrutiny." She argues that the police wanted to search her vehicle solely for the purpose of discovering drugs and argues that Officer Koch's conduct was suspect for the following reasons: he followed her vehicle for four miles before asking Officer Champagne to stop her, he believed that her vehicle likely contained drugs, and the state did not submit an inventory-search tow sheet at the omnibus hearing. Officer Koch testified that he did not have an inventory sheet or tow sheet in his possession when he conducted the search, but he did make note of the items in the vehicle.

Rohde contends that her case is analogous to *Holmes,* 569 N.W.2d at 189, in which the Minnesota Supreme Court held that the police officer's search of a vehicle was "not a valid inventory search" when the purpose of the search was to discover evidence of a crime. The state argues that the impoundment of Rohde's vehicle was lawful and that the police need not present a written tow sheet to prove the inventory search followed established procedures. The state asserts that the items inventoried were established through the officers' testimony. But Officer Champagne had lawful reasons for stopping Rohde. Her vehicle's registration and license plates were revoked, and Officer Champagne observed Rohde violate a signaling law. Under *Ture,* as long as investigation is not the sole purpose for conducting an inventory search, the search is valid.

We conclude that the district court did not err by determining that the police conducted the inventory search consistent with standard police procedures and that the inventory search of Rohde's vehicle was not pretextual.

## DECISION

Police may impound a vehicle for revoked license registration and plates, and for no insurance, when the driver does not ask to make her own towing arrangements. The district court did not err by denying Rohde's motion to suppress because the police had lawful reasons to impound her vehicle and the inventory search of the vehicle was not pretextual.

**Affirmed.**