STATE OF MINNESOTA

IN SUPREME COURT

A13-0610

Court of Appeals                                                          Anderson, J.

State of Minnesota,

　　　　　Respondent,

vs.                                                                Filed:  August 20, 2014
                                                              Office of Appellate Courts
Erica Ann Rohde,

　　　　　Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Donald LeBaron, Assistant Anoka
County Attorney, Anoka, Minnesota, for respondent.

Adam T. Johnson, Meshbesher & Associates, P.A., Minneapolis, Minnesota, for
appellant.

_____

S Y L L A B U S

An inventory search of a motor vehicle was unreasonable under the Fourth

Amendment to the United States Constitution because the police improperly impounded

the vehicle of a driver who was stopped but not arrested for misdemeanor traffic offenses

when the vehicle was lawfully parked.

Reversed and remanded.

1

O P I N I O N

ANDERSON, Justice.

Appellant Erica Rohde was convicted of fifth-degree drug possession, Minn. Stat. § 152.025, subd. 2(a)(1) (2012), and possession of drug paraphernalia, Minn. Stat. § 152.092 (2012), based on evidence that police officers found while performing an inventory search during the course of impounding Rohde's car. The district court denied Rohde's motion to suppress the evidence as the product of an unconstitutional search. The court of appeals affirmed. *State v. Rohde*, 839 N.W.2d 758, 766 (Minn. App. 2013). We granted Rohde's petition for review. The issue presented on appeal is whether the impoundment of the vehicle was unreasonable and, therefore, the subsequent inventory search of Rohde's car was unconstitutional. We conclude that the impoundment was unreasonable and therefore the search was unconstitutional.

During the afternoon of September 11, 2012, Blaine Police Officer Barry Koch was in plain clothes and an unmarked car, watching a house suspected of hosting drug trafficking. He saw a Chevrolet Monte Carlo drive away from the house. He followed the Monte Carlo because he had heard from another officer that people involved in drug trafficking at the house might be riding in a Monte Carlo. This Monte Carlo's license-plate number did not match the information he had received, but Koch ran a registration check. He learned that the Monte Carlo's registration had been revoked and that it was registered to Rohde, whose driver's license had also been revoked. He also learned that Rohde had been arrested previously and police had found a handgun and drugs in her

2

purse. From what Koch could see, the driver of the Monte Carlo matched Rohde's description in the records.

Koch called Blaine Police Officer Albert Champagne, who was in uniform and on patrol in a marked squad car nearby, and asked him to stop the Monte Carlo. Koch followed the Monte Carlo for about 4 miles while Champagne was en route. When Champagne arrived, he ran the Monte Carlo's license-plate number to verify what Koch had told him about the registration and the revoked status of Rohde's license. He also confirmed that the driver matched Rohde's description. After observing a signaling violation by the Monte Carlo, he stopped the vehicle. The Monte Carlo pulled over to the side of a residential street and was not interfering with traffic, blocking access to any property, or otherwise violating any parking rules.

Champagne approached the Monte Carlo and identified the driver as Rohde. He told her that he had stopped her because of the signaling violation and the revoked status of her license and registration. When Champagne asked for proof of insurance, Rohde indicated that the car was not insured.

Champagne decided to tow and impound the Monte Carlo, based on a Blaine Police Department policy requiring impoundment of uninsured vehicles stopped on a public road. He asked Rohde to get out of the car, and Rohde asked if she was under arrest. Champagne secured her in his squad car and explained that she was "technically" under arrest, by which he meant that she was not free to leave at the moment. Despite telling Rohde that she was "technically" under arrest, Champagne did not plan to take her to jail. Instead, he allowed her to call her mother to attempt to arrange a ride.

3

Koch arrived while Champagne was talking to Rohde. Champagne asked Koch to assist him in conducting an inventory search, which the department policy required for all impounded vehicles.

Koch found two small bags of methamphetamine and two glass pipes in a purse on the passenger seat of the Monte Carlo. Rohde was charged with fifth-degree possession of a controlled substance under Minn. Stat. § 152.025, subd. 2(a)(1), and possession of drug paraphernalia under Minn. Stat. § 152.092.

Rohde requested an omnibus hearing and moved to suppress the evidence that Koch had found in the Monte Carlo. She stipulated that the initial stop by Champagne was lawful but argued that the search violated the Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution, because the police were not authorized to impound the Monte Carlo and the inventory search itself was pretextual. The district court denied Rohde's motion. Rohde and the State then agreed to a stipulated-facts trial. The district court found Rohde guilty on both counts.

Rohde appealed, the court of appeals affirmed, *Rohde*, 839 N.W.2d at 766, and we granted Rohde's petition for review. Because we hold that the impoundment was unreasonable, and therefore the resulting inventory search was unconstitutional, we reverse and remand to the district court.

I.

The U.S. Constitution and the Minnesota Constitution forbid "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10; *see also Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding that the Fourth Amendment applies to the

4

states through the Due Process Clause of the Fourteenth Amendment). The language of the two constitutional provisions is nearly identical, and we have not held that Article I, Section 10, of the Minnesota Constitution is more protective than the Fourth Amendment to the U.S. Constitution in the context of inventory searches. *See State v. Carter*, 596 N.W.2d 654, 658 (Minn. 1999). Because Rohde does not argue that the Minnesota Constitution is more protective, we need not consider whether the Minnesota Constitution provides a separate basis for relief here.

Evidence obtained from an unreasonable search in violation of the Fourth Amendment is inadmissible. *Mapp*, 367 U.S. at 655. The basic question presented by this case, therefore, is whether the district court should have suppressed the evidence that Koch found when searching Rohde's Monte Carlo because the search was unreasonable and thus unconstitutional. Neither party disputes the facts underlying the district court's refusal to suppress the evidence, so the constitutionality of the search presents a pure question of law that we review de novo. *See State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001); *see also State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992) ("[T]he reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed.").

Generally, a search conducted without a warrant is "per se unreasonable." *Katz v. United States*, 389 U.S. 347, 357 (1967). In this case, the police did not have a warrant to

search[1] the Monte Carlo, so the search was unreasonable—and thus the evidence was inadmissible—unless the general warrant requirement does not apply. The State argues that the impoundment was proper and therefore the search was an inventory search, which is "a well-defined exception to the warrant requirement." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). The State bears the burden of showing that such an exception applies in a particular case. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (citing *Ture*, 632 N.W.2d at 627).

In determining whether an inventory search was reasonable, the administrative and caretaking purposes that justify inventory searches only arise because the police have taken custody of some piece of property. *See State v. Goodrich*, 256 N.W.2d 506, 510 (Minn. 1977). Accordingly, the underlying impoundment must be the first part of the analysis of whether an inventory search was reasonable; if the impoundment was unreasonable, then the resulting search was also unreasonable. *See Gauster*, 752 N.W.2d at 502 ("[T]he threshold inquiry when determining the reasonableness of an inventory search is whether the impoundment of the vehicle was proper."). We must determine as a threshold matter whether the officers had any authority or purpose that justified the impoundment.

---

[1] The State does not dispute that Koch conducted a search within the meaning of the Fourth Amendment when he opened the car door, emptied a purse, found a closed bag inside, and opened the bag.

II.

In order for an impoundment to be proper, the State "must have an interest in impoundment that outweighs the individual's Fourth Amendment right to be free of unreasonable searches and seizures." *Id.* at 502. The U.S. Supreme Court has stated that the police, in the interests of public safety, have the authority to "remove from the streets vehicles impeding traffic or threatening public safety and convenience." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Additionally, police may impound a vehicle to "protect[] the [defendant's] property from theft and the police from claims arising therefrom." *Goodrich*, 256 N.W.2d at 511. Here, the State has not met its burden of proving that the State's interest in impounding the vehicle outweighed Rohde's Fourth Amendment right to be free from an unreasonable search and seizure.

The State attempts to address the reasonableness of impounding the Monte Carlo by arguing that impoundment was authorized by statute because the car's registration had been revoked and its insurance had expired. The court of appeals took a similar approach. *See Rohde*, 839 N.W.2d at 763-65 ("[T]he impoundment of the vehicle was lawful because the vehicle could not remain on the public roadway with revoked license plates and without insurance."). But this focus on whether the impoundment was authorized by Minnesota law is misplaced, because the real question in this case is whether the impoundment was reasonable *under the Fourth Amendment*. An impoundment is reasonable if "[t]he state's interest in impounding . . . outweigh[s] the individual's Fourth Amendment right to be free of unreasonable searches and seizures." *Goodrich*, 256 N.W.2d at 510. Logically, this question is independent of whether the

7

impoundment was authorized under Minnesota law, because a state statute might authorize an unreasonable search. *See Cooper v. California*, 386 U.S. 58, 61 (1967) ("[T]he question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment."). Furthermore, none of the statutes expressly allow or prohibit impoundment under the circumstances of this case. The parties' statutory arguments, therefore, are not definitive.

The court of appeals' focus on Minnesota statutes appears to be a result of misreading our opinion in *Gauster*, 752 N.W.2d at 503-05. *See Rohde*, 839 N.W.2d at 763. In *Gauster*, we looked to "state law to determine whether impoundment was justified." 752 N.W.2d at 504. We did so, however, because the impoundment at issue in *Gauster* was allegedly based on a policy of impounding "for violations, or for related enforcement or safety reasons *as defined by state law*." *Id.* In other words, in *Gauster* we addressed whether an impoundment was authorized by state law in order to determine whether the impoundment was "conducted pursuant to standardized criteria," because the standardized criteria in that case depended on state law. *Id.* at 503. Our decision does not support the general proposition that state law determines whether a search is constitutionally reasonable. *See id.* at 504-08 (considering whether the nonstatutory "police caretaking role" justified impounding a vehicle, despite first concluding that various statutes did not authorize impoundment).

The State also argues that "the police caretaking basis" authorized the police to impound the Monte Carlo to "ensure that traffic safety was protected." The U.S. Supreme Court has stated that police perform "community caretaking functions" and

8

have authority "to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience." *Opperman*, 428 U.S. at 368-69. There are a number of different circumstances in which a police officer could justifiably impound a car based on a judgment that the public safety is put at risk by leaving the vehicle in place. For example, impounding may be reasonable when there has been a vehicle accident, to permit the uninterrupted flow of traffic, or when vehicles have violated parking ordinances and thus jeopardize the public safety and the efficient movement of traffic. In these situations, the authority of the police to impound vehicles is "beyond challenge." *Id.* at 369. This authority cannot justify the impoundment here, however, because Champagne and Koch both testified that the Monte Carlo was not violating any parking laws, impeding traffic, or posing a threat to public safety.[2] Therefore, there is nothing in this record to support an inference that immediately impounding the Monte Carlo was in any way necessary for public safety.[3]

Even though the State only mentions the caretaking authority in the context of "traffic safety," we recognize a similar caretaking authority to "impound a vehicle to

---

[2] The State makes what may be a related argument when it asserts that the department policy "rendered authority to the police to impound the vehicle." The State's argument appears to be that the department policy justified the impoundment because the policy generally furthers "the unimpeded and safe flow of traffic, proper registration and vehicle use." In this case, however, the record is clear that the Monte Carlo was not impeding traffic or otherwise unsafe, so there is no reason to conclude that the immediate impoundment in this case, even if consistent with the policy, served public safety.

[3] While we recognize that uninsured vehicles operated on public roadways pose a safety threat, in this case, given the testimony of the officers as well as the record, the State has not proven that its interest in public safety outweighs Rohde's right to be free of an unreasonable search and seizure.

9

'protect[] the [defendant's] property from theft and police from claims arising therefrom.' " *Gauster*, 752 N.W.2d at 503 (alteration in original) (quoting *Goodrich*, 256 N.W.2d at 511). This authority arises "when it becomes essential for [the police] to take custody of and responsibility for a vehicle due to the incapacity or absence of the owner, driver, or any responsible passenger." *City of St. Paul v. Myles*, 298 Minn. 298, 304, 218 N.W.2d 697, 701 (1974).

In this case, until Koch searched the Monte Carlo and found the methamphetamine and pipes, Champagne did not plan to arrest Rohde or take her to jail, as demonstrated by the fact that he allowed Rohde to call her mother to attempt to arrange a ride. At the time the search began, Rohde was present and retained control over the Monte Carlo, and there was no reason for the police to take responsibility for the vehicle. *See Gauster*, 752 N.W.2d at 506 (explaining that "the need for the police to protect the vehicle and its contents is often present when police officers arrest a driver" but, conversely, is not present when the driver "was not arrested and therefore never relinquished control of his vehicle and had no need to leave it unattended"); *cf. State v. Robb*, 605 N.W.2d 96, 104 (Minn. 2000) (finding that an impoundment would not be reasonable when a friend was willing and able to take control of the vehicle); *Goodrich*, 256 N.W.2d at 511 (concluding that even a defendant who *was* arrested was still able to "obviate[]" the "necessity of protecting [his] property from theft and the police from claims arising therefrom" by arranging to have a family member take care of his car).

In response, the State emphasizes that Rohde never asked if she could arrange a tow herself instead of letting the police impound the Monte Carlo. The State's argument

is based on *Colorado v. Bertine*, in which the Supreme Court held that police were not required to offer an arrested driver an opportunity to make alternative arrangements before taking his van into custody for safekeeping. 479 U.S. at 373-74. But, as we recognized in *Gauster*, cases in which the driver of a vehicle is arrested are fundamentally different from cases in which the driver remains free. 752 N.W.2d at 507. When the driver is arrested, it "may [be] necessary to do *something* with the vehicle"; in those cases, the police have a reason to take responsibility for the vehicle. *Id.* On the other hand, when the driver is not arrested, it is "not necessary for the police to take [the] vehicle into custody in the first place." *Id.* Because Rohde was not arrested, it was not necessary for the police to take control of the vehicle; thus, the police had no interest in protecting the property from theft or other claims arising from police control of the vehicle.

III.

We conclude, in light of the facts of this case—including that Rohde was not arrested prior to the impoundment and that the vehicle did not pose a safety threat—that the impoundment of Rohde's vehicle was not justified under the Fourth Amendment. Because the impoundment of the Monte Carlo was not justified, we further conclude that the inventory search of the vehicle violated Rohde's Fourth Amendment right against unreasonable searches or seizures. We therefore reverse the respective decisions of the court of appeals and district court, and we remand this matter to the district court with instructions to suppress the evidence found during the inventory search.

Reversed and remanded.