*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0718**

State of Minnesota,
Appellant,

vs.

Tou Vang Pal Lor,
Respondent.

**Filed September 28, 2015
Affirmed
Bjorkman, Judge**

Ramsey County District Court
File No. 62-CR-14-8240

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for appellant)

Melvin R. Welch, Amanda J. Montgomery, St. Paul, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Bjorkman, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges the suppression of evidence discovered during the warrantless search of respondent's vehicle. Because the impoundment of the vehicle that led to the inventory search was unreasonable, we affirm.

**FACTS**

On August 14, 2014, St. Paul Police Officer Jon Sherwood stopped respondent Tou Vang Pal Lor's vehicle because it was blocking access to an alleyway. During the stop, Officer Sherwood discovered that Lor's driver's license had been revoked. Officer Sherwood issued Lor a citation and warned him that he would be subject to arrest if stopped for driving without a valid license in the future.

On August 22, Officer Sherwood observed Lor driving again. Officer Sherwood initiated a traffic stop, ordered Lor out of the vehicle and conducted a pat search. Officer Sherwood reminded Lor of his previous warning that he would be "eligible for arrest" and his vehicle could be towed. After completing the pat search, Officer Sherwood escorted Lor to his squad car, explaining that he was placing him there so he could "write a citation." Officer Sherwood repeatedly asked Lor if he had anything on him or in the car, including guns or drugs. Once Lor was secured in the squad car, Officer Sherwood returned to Lor's vehicle where he was joined by Officers Sean Maloney and Adam Bravo who had just arrived on the scene.

The three officers proceeded to search Lor's vehicle. At one point, Officer Sherwood returned to the squad car and asked Lor again if there was anything in the

vehicle or its trunk. Officer Sherwood reminded Lor of his prior warning that he was "subject to arrest" based on his driving history. Lor asked Officer Sherwood to write him a citation, explaining that he was able to pay the fine because he had a new job. Officer Sherwood responded, "Ok, I'll work with you on that," before returning to Lor's vehicle to search the trunk. Officer Maloney then discovered a baggie of methamphetamine in a makeshift compartment located in the center console around the gear shift. Once the drugs were discovered, Officer Sherwood ordered Lor out of the squad car and placed him in handcuffs. Subsequently, Officers transported Lor to jail and called for a tow truck.

Lor was charged with a controlled-substance crime. Lor moved to suppress the seized evidence. At the suppression hearing, the state submitted the squad-car video, along with documents related to Lor's driving history and the police department's towing and inventory search policies; Officers Sherwood and Maloney both testified. Officer Sherwood described stopping Lor on both occasions, and stated that he arrested Lor for driving after revocation at the time he ordered him out of his vehicle on August 22. He explained that he would not have taken Lor out of his vehicle if he was simply going to issue a citation. Officer Sherwood also testified that the search of Lor's vehicle was an inventory search based on Lor's arrest and police department policy that permits impoundment when a vehicle's owner has failed to respond to over five traffic citations. Officer Maloney testified regarding how and where he found the drugs within the vehicle.

The district court granted Lor's suppression motion on the record at the conclusion of the hearing. After reviewing the circumstances with reference to the squad-car video,

the court stated that it had "a lot of questions with regards to how the police conducted this stop and seizure." First, the district court expressed skepticism about Officer Sherwood's decision to handle the August 22 stop differently from the prior stop, including immediately ordering Lor out of the vehicle, conducting a pat search, repeatedly asking Lor if he had anything in the car, and impounding the vehicle. Second, the court questioned the impoundment of the vehicle because it was legally parked and because Officer Sherwood's testimony did not support the assertion that the arrest preceded the search. The district court implicitly questioned the veracity of the officer's testimony, noting that "[i]f the decision was made immediately by Officer Sherwood to arrest the defendant, why was the defendant not immediately handcuffed until after the drugs were found? Why the tow truck had not been called before the discovery of the drugs? And why no one apparently was keeping track of what they were seeing inside the vehicle."

Finally, the district court found that the inventory search was improperly conducted. Based primarily on its review of the squad-car video, the district court found that the search constituted improper "general rummaging" because it was clear that the officers "weren't overly concerned about safeguarding any property that the defendant might have had in [the] car," and that their "sole motivation was to discover evidence of a crime." The state appeals the suppression order.

## DECISION

When reviewing pretrial orders on motions to suppress evidence, we independently review the facts and determine, as a matter of law, whether the district

4

court erred in suppressing evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). We examine the district court's findings of fact for clear error, giving due weight to inferences drawn from those facts, *State v. Lee*, 585 N.W.2d 378, 383 (Minn. 1998), and defer to the district court's credibility assessments. *State v. Miller*, 659 N.W.2d 275, 279 (Minn. App. 2003), *review denied* (Minn. July 15, 2003). When appealing a pretrial suppression order, the state must "clearly and unequivocally" show both that the district court's order will have a critical impact on the state's ability to prosecute the defendant successfully and that the order is erroneous. *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998).[1]

The state first contends that the warrantless search of Lor's vehicle was proper because it fell within the inventory-search exception to the warrant requirement.[2] *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S. Ct. 738, 741 (1987). An inventory search is only reasonable if the underlying impoundment was also valid. *See State v. Gauster,* 752 N.W.2d 496, 502 (Minn. 2008) ("[T]he threshold inquiry when determining the reasonableness of an inventory search is whether the impoundment of the vehicle was proper."). In *State v. Rohde*, our supreme court addressed the limited circumstances under which law enforcement may impound a vehicle. 852 N.W.2d 260, 264-66 (Minn. 2014). A police officer stopped Rohde's vehicle for a minor traffic offense and learned that the vehicle was not registered and Rohde did not have a valid driver's license. *Id.* at

---

[1] Lor does not dispute, and we agree with the state's assertion, that the suppression order prevents the state from prosecuting Lor for a controlled-substance crime, thus satisfying the critical-impact requirement.

[2] Lor does not challenge the validity of the initial stop.

262. The officer did not arrest the defendant, allowing her to arrange an alternative ride home, but did impound the vehicle pursuant to a police department policy that required the impoundment of uninsured vehicles. *Id.* During an inventory search, officers discovered drugs in the vehicle. *Id.* After the district court denied the defendant's suppression motion, and this court affirmed, the supreme court held that the impoundment was unreasonable because the vehicle was legally and safely parked on a residential street and the officer did not arrest the defendant. *Id.* at 262-63.

The supreme court began its analysis by reaffirming the established principle that the state's interest in impounding a vehicle must outweigh the individual's Fourth Amendment right to be free from unreasonable searches. *Id.* at 264. In doing so, the supreme court noted that this determination is "independent of whether the impoundment was authorized by Minnesota law," and directly rejected the proposition that state law dictates whether impoundment is reasonable. *Id.* at 264-65.

The supreme court next identified the circumstances under which impoundment may be reasonable. Both circumstances require the police to perform a caretaking function. First, officers are authorized "to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience." *Id.* at 265 (quotation omitted). Second, officers may impound a vehicle to protect an individual's property from theft and the police from claims of theft or property damage. *Id.* This authority exists when the police must "take custody of and responsibility for a vehicle due to the incapacity or absence of the owner, driver, or any responsible passenger." *Id.* Implicit in this second caretaking scenario is the fact that cases in which the driver of a vehicle is

6

arrested are fundamentally different from cases in which the driver remains free; officers are generally justified in impounding a vehicle when the driver is taken into custody. *Id.* at 266; *see also Gauster*, 752 N.W.2d at 506 (recognizing that "the need for the police to protect the vehicle and its contents is often present when police officers arrest a driver"). We are not persuaded that the impoundment of Lor's vehicle was justified under either basis.

It is undisputed that Lor's vehicle was legally parked on a residential street and did not impede traffic or block access to property. Accordingly, the impoundment of his vehicle was only reasonable if Officer Sherwood decided to take Lor into custody before initiating the impoundment and inventory search. The state asserts this was the case, pointing out that there was probable cause to arrest Lor for driving after revocation and citing Officer Sherwood's testimony that he immediately placed Lor under arrest. Lor does not dispute that Officer Sherwood had probable cause to immediately arrest him, but contends the impoundment was invalid because the decision to arrest him was not made until after the drugs were discovered.

As in *Rohde*, the reasonableness of the impoundment—i.e., the officer's authority to exercise the caretaking function—turns on whether Lor was arrested prior to search. While the district court's findings here are not as clear as they could have been, we read its oral ruling to include findings that there was no arrest until the drugs were found. We review these findings for clear error. *See Rohde*, 852 N.W.2d at 256-66 (examining whether the facts demonstrated that the officer "plan[ned] to arrest Rohde or take her to jail" before choosing to impound the vehicle); s*ee also State v. Shellito*, 594 N.W.2d 182,

7

186 (Minn. App. 1999) (explaining the district court may make factual findings from its "independent review of a video recording of a traffic stop," which are reviewed for clear error).

The record supports the district court's findings that the August 22 stop presented a fluid and evolving situation; some aspects of the stop suggest an immediate arrest, but many others do not. While Officer Sherwood ordered Lor out of his vehicle and pat searched him[3] before placing him in the squad car, he did not tell Lor that he was under arrest. Until the drugs were discovered, Officer Sherwood couched his references to arrest in terms of reminding Lor that he was "subject to" or "eligible for" arrest. And before placing Lor in the back of the squad car, Officer Sherwood said that he was going to write him a citation. During the search, Officer Sherwood again reminded Lor that he was "subject to" arrest. Lor asked Officer Sherwood if he could just give him a ticket and the officer responded, "Ok, I'll work with you on that." Only after the drugs were found did Officer Sherwood return to the squad car, place Lor in handcuffs, and take him to jail. On this record, we conclude that the district court did not clearly err in finding Lor was not arrested until after the drugs were found.

Alternatively, the state contends that the impoundment was reasonable because it was consistent with police department policy authorizing impoundment when a driver has failed to respond to multiple citations for parking or traffic offenses. We disagree. As

---

[3] The state contends that Officer Sherwood briefly handcuffed Lor before conducting the pat search. But Officer Sherwood simply testified, consistent the squad-car video, that he "had [Lor] put his hands behind his back" prior to the pat search. Accordingly, the district court's finding that Lor was not handcuffed until the drugs were found is not clearly erroneous.

8

noted above, *Rohde* instructs that the reasonableness of an impoundment is measured under the Fourth Amendment, not by state law or police department policy. *Rohde,* 852 N.W.2d at 264-65. The supreme court clearly delineated the situations when law enforcement's caretaking authority provides a reasonable basis to impound a vehicle, *id.* at 265-66, none of which were present here.

In sum, we conclude that the impoundment of Lor's vehicle was unreasonable, invalidating the inventory search that led to the discovery of the drugs. Accordingly, we affirm the district court's suppression order.

**Affirmed.**