*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1026**


State of Minnesota,
Respondent,

vs.

Nicole Renaye Kroells,
Appellant.


**Filed March 7, 2016
Affirmed
Halbrooks, Judge
Dissenting, Randall, Judge***


McLeod County District Court
File No. 43-CR-14-1301

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, Daniel R. Provencher, Assistant County Attorney, Glencoe, Minnesota (for respondent)

Christian R. Peterson, Anoka, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Chutich, Judge; and Randall, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**HALBROOKS**, Judge

Appellant challenges her conviction of second-degree controlled-substance crime, arguing that the district court erred by denying her motion to suppress evidence found during an inventory search of her vehicle. We affirm.

**FACTS**

On August 25, 2014, McLeod County Deputy Sheriff Scott Wawrzyniak stopped appellant Nicole Renaye Kroells's vehicle after observing that the tint of the rear window appeared to be darker than permitted under Minnesota law. While speaking with Kroells, Deputy Wawrzyniak observed that she was extremely nervous and fidgety. Upon learning Kroells's identity, Deputy Wawrzyniak recalled that Kroells had an active arrest warrant. Kroells also admitted that she did not have insurance on the vehicle. Deputy Wawrzyniak arrested Kroells based on the active warrant.

Based on Minn. Stat. § 168B.035, subd. 3(b)(3) (2014) and the McLeod County Sheriff's Office Towing and Release Policy, Deputy Wawrzyniak requested a tow for the uninsured vehicle and then conducted an inventory search of Kroells's vehicle. During the search, he discovered $6,800 in a sunglasses case. He also discovered a cylindrical Cheetos can. The Cheetos can was only partially full, and Deputy Wawrzyniak observed what he believed to be a hidden compartment approximately one-third of the way down the can. He waited for another officer to arrive and then they took the can apart. The officers discovered another $3,000 in cash and 19.1 grams of methamphetamine.

2

Respondent State of Minnesota charged Kroells with second-degree controlled-substance crime. Kroells moved to suppress the evidence obtained as a result of the inventory search, arguing that Deputy Wawrzyniak did not have reasonable, articulable suspicion to stop her vehicle, that he unlawfully expanded the scope of the traffic stop, and that he unlawfully searched the vehicle and its contents. The district court denied the motion, concluding that the initial stop was valid and that the inventory search was proper because the deputy was going to have the vehicle towed because it was uninsured and was blocking a driveway.

Pursuant to Minn. R. Crim. P. 26.01, subd. 2, Kroells waived her right to trial and stipulated to the state's case in order to obtain appellate review of the district court's pretrial ruling. The district court found Kroells guilty of second-degree controlled-substance crime and sentenced her to 45 months in prison. This appeal follows.

## DECISION

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). Both the Fourth Amendment to the U.S. Constitution and article I, section 10, of the Minnesota Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A warrantless search is generally unreasonable, unless it falls into one of the recognized exceptions to the warrant requirement. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).

3

An inventory search is a well-defined exception to the warrant requirement. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). An inventory search is considered reasonable because it "serve[s] to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S. Ct. 738, 741 (1987). An inventory search is reasonable under the Fourth Amendment if the police (1) follow standard procedures in conducting the search and (2) conduct the search, at least in part, for the purpose of obtaining an inventory. *State v. Holmes*, 569 N.W.2d 181, 188 (Minn. 1997). An inventory search must not be used as an excuse to engage in "general rummaging in order to discover incriminating evidence." *Id.* at 187 (quotation omitted).

On appeal, Kroells concedes that "the deputy had the authority to retrieve the Cheetos container from within her car and even open it if possible." But she argues that the district court erred by denying the motion to suppress because the "destruction of a closed container to reveal its contents goes beyond the scope of an inventory search." The state responds that this issue is not properly before this court because it was not raised below.

To the district court, Kroells argued that the evidence should be suppressed because the deputy did not have a reasonable, articulable suspicion to stop her. She further argued that the expansion of the stop was unconstitutional and generally alleged that the deputy should not have opened a closed container. But she did not argue, as she does now, that the deputy's method of opening the can exceeded the scope of an

4

inventory search. A party may not obtain appellate review "by raising the same general issue litigated below but under a different theory." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

The district court properly determined that the evidence was discovered during a constitutionally permissible inventory search. The inventory search was conducted pursuant to the McLeod County Sheriff's Office Vehicle Towing and Release Policy, which allows officers to search containers "even if they are closed and/or locked." In *Bertine*, the Supreme Court concluded that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment. 479 U.S. at 374, 107 S. Ct. at 742.

Moreover, Deputy Wawrzyniak testified that the purpose of the inventory-search policy is to "take the liability off of the sheriff's office for anything that's in the vehicle." The Supreme Court has also stated that one of the purposes of an inventory search is to insure the police against claims of lost or stolen property. *Id.* at 372, 107 S. Ct. at 741. Prior to opening the can, Deputy Wawrzyniak discovered $6,800 in a sunglasses case. Given that he had just discovered a large sum of money inside one unlikely container, it was reasonable to think there might be valuable objects or money inside the hidden compartment of the Cheetos can. Indeed, there was $3,000 inside the Cheetos can. By inventorying the contents of the containers, Deputy Wawrzyniak protected the department against claims of lost or stolen property and money. We therefore conclude

that the district court did not err by denying Kroells's motion to suppress the evidence discovered during a valid inventory search.[1]

**Affirmed.**

---

[1] Because we conclude that the evidence was discovered during a valid inventory search, we do not reach the state's arguments that the search can be justified as a search incident to arrest or under the automobile exception to the warrant requirement.

**RANDALL**, Judge (dissenting)

I would reverse. The deputy's "hunch" that the rear window was tinted, without more, is not a basis for a traffic stop. "An investigatory stop of a vehicle is justified if police have a *particularized* and *objective* basis for suspecting the particular person stopped of criminal activity." *State v. Yang*, 774 N.W.2d 539, 551 (Minn. 2009) (emphasis added) (quotations omitted). The officer's suspicion "must be something more than a mere hunch." *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997). A minor visible violation of a traffic law can provide an *objective* basis for a stop. *Id.* Here, the stop was based solely on the deputy's "opinion" that appellant's rear window was unlawfully tinted. Appellant challenged the stop of his vehicle on this basis at the omnibus hearing. The district court upheld the stop. Appellant did not directly raise the stop issue in this appeal,[2] but the state retains the burden to prove that a warrantless search is justified by an exception to the warrant requirement, *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007), and this court has a duty to review issues despite the oversight of counsel. *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990). To ignore the invalidity of this basis for the stop would give police a "blank check" to stop any vehicle for any reason. *See State v. Cvar*, 293 Minn. 439, 442, 196 N.W.2d 624, 626 (1972) (noting it would give authorities a "blank check" to engage in exploratory searches to permit an arrest and search on the basis of an anonymous tip without corroboration).

---

[2] Appellant is represented by different counsel on appeal.

There are no published opinions affirming a traffic stop *solely* on the basis that a law enforcement officer "thought" a vehicle had illegally-tinted windows. Our unpublished opinions provide my analysis. Unlike this case, our unpublished opinions show other circumstances supporting the stop, such as *specific* testimony regarding the officer's experience with tinted windows, or confirmatory testing with a tint-meter. *See State v. Homstad*, No. A09-373, 2010 WL 346372, at *1-4 (Minn. App. Feb. 2, 2010) (affirming traffic stop under totality of circumstances where vehicle was diagonally parked, with engine running at 1:24 a.m. in a commercial area where business were closed, officer knew a burglary had occurred at one of the businesses, and officer could not see inside the vehicle because of the tinted windows); *see also State v. Dancy*, No. C2-01-1102, 2002 WL 857660, at *1-2 (Minn. App. May 7, 2002) (affirming traffic stop that included officer's suspicion that vehicle, and people associated with it, were involved in illegal activity, and noting defendant conceded stop was valid on grounds vehicle made an illegal turn and its windows were illegally tinted); *State v. Schaefer*, No. C6-98-779, 1999 WL 44154, at *1-3 (Minn. App. Feb. 2, 1999) (affirming traffic stop when officer confirmed illegality with tint-meter, but noting vehicle also had loud muffler); *cf. State v. Glover*, No. A14-1550, 2015 WL 1130979, at *2-3 (Minn. App. Mar. 16, 2015) (reversing pretrial suppression order on grounds that officer's experience in measuring "hundreds" of vehicle windows and confirmation with tint-meter provided valid basis for stop).

Here, the record evidence does not include any of the above. There are no other circumstances supporting reasonable suspicion. There was no witness testimony

regarding the deputy's specific experience investigating window tints. There was no testing confirming that the rear window was in fact illegally tinted. The statute prohibits driving a motor vehicle when a window is treated with a material that has "a light transmittance of less than 50 percent plus or minus three percent in the visible light range." Minn. Stat. § 169.71, subd. 4(a)(3) (2014). The deputy's "opinion" that the window was illegally tinted, *without confirmation* and without any additional suspicious circumstances, is not an objective basis for the stop. The stop was based on a "subjective hunch" and nothing more. I would reverse on that basis.

Even if the stop was valid, I would reverse on the basis that the impoundment of the vehicle was not reasonable under the Fourth Amendment. The question of whether an inventory search is reasonable depends on whether the police had a right to take custody of the vehicle. *State v. Rohde*, 852 N.W.2d 260, 264 (Minn. 2014). Both the district court and the majority rely on statutory authority and the sheriff's department policy permitting towing when a vehicle is uninsured and blocking a driveway. *See* Minn. Stat. § 168B.035, subd. 3(b)(3) (permitting a towing authority to tow a motor vehicle that is blocking a driveway, alley, or fire hydrant). But the supreme court in *Rohde* clarified that state law alone does not make an impoundment proper. 852 N.W.2d at 264. Appellant's counsel relied on this case in his arguments to the district court. But none of the parties reference this case in their briefs to this court. And in support of its argument that an uninsured vehicle provides a basis for impoundment, the state relies on this court's opinion in *State v. Rohde*, 839 N.W.2d 758, 764 (Minn. App. 2013), "which

has been reversed!" I rely on the supreme court's decision in *Rohde* to conclude that the impoundment was unreasonable under the Fourth Amendment.

For an impoundment to be reasonable, the state's interest must outweigh the individual's Fourth Amendment rights. *Rohde*, 852 N.W.2d at 264. The police have community caretaking functions, which permit removal of vehicles "impeding traffic" or "threatening public safety." *Id.* at 265 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368-69, 96 S. Ct. 3092, 3097 (1976)). But there is nothing in this record to support impoundment for either of these concerns. The vehicle was not damaged or parked on a public street where it would interrupt the flow of traffic, but was parked in another person's private driveway. Although the officer indicated that the vehicle was blocking the driveway, he also admitted that the resident could drive around the vehicle to exit the driveway. Even though appellant was arrested on a warrant for driving after revocation and for no proof of insurance, the sheriff's department's own policy provides that a "[t]raffic-related warrant arrest" is a situation "where consideration should be given to leaving a vehicle at the scene in lieu of towing." Moreover, the fact that appellant was arrested does not mean that she was unable to make arrangements for someone to take care of the vehicle. *See State v. Goodrich*, 256 N.W.2d 506, 511 (Minn. 1977) (concluding that defendant who was arrested was still able to protect his "property from theft and the police from claims arising therefrom" by arranging for a family member to take his car). The record indicates that appellant was anxious about her child, who was left in the care of appellant's sister, suggesting that there were family members who

could take responsibility for the vehicle. Immediate impoundment was not necessary to protect the property.

Under these facts, the impoundment was unreasonable under the Fourth Amendment. Because the impoundment was unreasonable, the resulting inventory search was unreasonable. I would also reverse on that basis.

Finally, I would reverse because the deputy exceeded the lawful scope of an inventory search when he used a knife to rip open the Cheetos container. An inventory search must be conducted according to standard criteria, in good faith, and not for the purpose of investigating suspected criminal activity. *Colorado v. Bertine*, 479 U.S. 367, 374-76, 107 S. Ct. 738, 742-43 (1987). Although the sheriff's department policy permits inventorying the contents of closed or locked containers, that policy does not include using a knife to rip open a container.

Appellant persuasively relies on cases from other jurisdictions that recognize that damaging property is inconsistent with the dual purpose of an inventory: to protect the owner's property and to protect police from claims that the owner's property has been lost or damaged. In *Commonwealth v. Vanya V.*, the Massachusetts Court of Appeals considered whether police policy permitting the opening of a bag during an inventory search included using a knife to cut the stitching of the bag. 914 N.E.2d 339, 343 (Mass. App. Ct. 2009). The court concluded that "[p]ermitting an officer to destroy or break into a locked container runs counter to the very purpose of the inventory exception" and "served no noninvestigatory purpose." *Id.* (reversing adjudication of drug charges where contents of bag were not obtained as a result of a legitimate inventory search). Similarly,

in *State v. Cabage*, the Tennessee Supreme Court concluded that allowing "an officer to cut or otherwise damage a locked container in order to conduct an itemized inventory of its contents" is not consistent with "[t]he purpose of an inventory . . . to protect the property of the owner and to protect officers from claims by the owner that the property was damaged." 649 S.W.2d 589, 592 (Tenn. 1983) (reversing conviction of possession of marijuana with intent to sell where officers used bolt cutters to open locked trunk during inventory search).

As in these cases, I conclude that ripping open the Cheetos container was not a legitimate inventory search. It was a fishing search for criminal activity. It destroyed rather than preserved appellant's property.

Both the stop and the search violated basic constitutional principles. I would reverse.