*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0070**

State of Minnesota,
Respondent,

vs.

Jebah Doe,
Appellant.

**Filed December 26, 2023**
**Affirmed**
**Frisch, Judge**

Hennepin County District Court
File No. 27-CR-20-25721

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Peter H. Dahlquist, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Johnson, Presiding Judge; Frisch, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

Appellant argues that the district court erred in denying his motion to suppress evidence discovered in his vehicle during a traffic stop because law enforcement unlawfully expanded the scope of the stop. Because each incremental intrusion by law enforcement was reasonable, we affirm.

**FACTS**

This case arises from appellant Jebah Doe's challenge to the district court's pretrial order denying his motion to suppress evidence of a firearm discovered in a vehicle that he was driving. At the suppression hearing, the district court received testimony from the sergeant who conducted the traffic stop and also received the sergeant's squad-car video from the stop. A summary of the evidence at the suppression hearing follows.

On November 26, 2020, the sergeant heard dispatch relay that a vehicle with no license plates and front-end damage had struck a concrete median. The sergeant located a vehicle matching the description provided by dispatch and began to follow the vehicle. The sergeant's squad-car video depicts the vehicle weaving within the traffic lane and crossing the fog line. The sergeant initiated a traffic stop on the highway immediately before an offramp exit. The driver stopped the vehicle partially on the shoulder of the highway and partially within the traffic lane. After the driver initially stopped the vehicle, the driver began reversing the vehicle on the highway shoulder, prompting the sergeant to yell, "Stop!"

2

The sergeant approached the front passenger-side door and immediately tried to open that door. When the door did not open, the sergeant knocked on the window, and the sergeant was then able to open the car door. After opening the door, the sergeant leaned into the vehicle and asked the driver if everything was okay. The driver responded that everything was okay. The sergeant asked if the driver had been involved in an accident. The driver replied that he had not been involved in an accident. The sergeant stated to the driver that he stopped the vehicle after receiving driving complaints and then asked the driver for his license. The driver responded that he did not have a license with him but identified himself as Doe, providing his full name and date of birth. The sergeant closed the door, returned to his squad car, ran Doe's name through law-enforcement databases, and learned Doe did not have a valid driver's license.

Because Doe did not have a valid driver's license and because the vehicle was parked on the highway in a manner posing a traffic hazard, the sergeant ordered that Doe's vehicle be towed. The sergeant returned to Doe's vehicle, this time approaching the front driver-side door, tapped on the window, and opened the door. Immediately upon opening the door, the sergeant saw a firearm between Doe's legs on the floor of the vehicle and instructed Doe not to move. The sergeant leaned into the vehicle to secure Doe's arms and another officer on the scene removed the gun from inside the vehicle. Doe was arrested and the vehicle was impounded. Police conducted an inventory search of the vehicle.

Respondent State of Minnesota charged Doe with possession of a firearm by an ineligible person pursuant to Minn. Stat. § 624.713, subd. 1(2) (2020), and receiving stolen property pursuant to Minn. Stat. § 609.53, subd. 1 (2020). Doe moved to suppress the

3

firearm evidence seized from his vehicle, arguing that the segreant had illegally entered and searched that vehicle. The district court denied his motion. Doe then moved for reconsideration of his motion to suppress, arguing generally that the sergeant violated Doe's Fourth Amendment rights when he opened the vehicle doors. The district court denied the motion to reconsider. Doe waived his right to a jury trial and proceeded with a stipulated-evidence trial under the procedures described in Minn. R. Crim. P. 26.01, subd. 4. The district court found Doe guilty of possession of a firearm by an ineligible person and of receiving stolen property, entered judgment of conviction for both counts, and sentenced him to 60 months' imprisonment for possession of a firearm by an ineligible person.

Doe appeals.

**DECISION**

Doe argues that the district court erred in denying his motion to suppress because the sergeant unlawfully expanded the scope of the traffic stop by opening the passenger-side and driver-side doors to the vehicle. Because the sergeant's actions were reasonable incremental intrusions following a lawful traffic stop, and the evidence would otherwise have been inevitably discovered, we disagree.

The United States and Minnesota Constitutions protect an individual's right against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless seizures are unreasonable, and thus unconstitutional, unless a recognized exception to the warrant requirement applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971) ("The most basic constitutional rule in this area is that searches conducted

4

outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." (quotation omitted)); *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). One exception to the warrant requirement permits reasonable investigatory seizures, including traffic stops. *State v. Askerooth*, 681 N.W.2d 353, 363 (Minn. 2004). But an officer's actions during the traffic stop must be "reasonably related to and justified by the circumstances that gave rise to the stop in the first place" and "may become invalid if [the stop] becomes 'intolerable' in its 'intensity or scope.'" *Id.* at 364 (quoting *Terry v. Ohio*, 392 U.S. 1, 17-18 (1968)). Thus, "each incremental intrusion during a traffic stop [must] be tied to and justified by one of the following: (1) the original legitimate purpose of the stop, (2) independent probable cause, or (3) reasonableness, as defined in *Terry*." *Id.* at 365. In assessing reasonableness, "the court should ask whether with the facts available to the officer at the moment of the seizure or search, would a person of reasonable caution believe that the action taken was appropriate." *State v. Othoudt*, 482 N.W.2d 218, 223 (Minn. 1992). "The test for appropriateness, in turn, is based on a balancing of the government's need to search or seize 'and the individual's right to personal security free from arbitrary interference by law officers.'" *Askerooth*, 681 N.W.2d at 365 (quoting *United States v. Brignoni-Ponce,* 422 U.S. 873, 878 (1975)). When evaluating a district court's pretrial order on a motion to suppress, we review the district court's factual findings for clear error and its legal determinations de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

Against this backdrop, we address the two incremental intrusions by the sergeant following the lawful traffic stop.

***Passenger-Side Door***

Doe first argues that the district court erred in determining that the sergeant acted reasonably in opening the passenger-side door because the sergeant's investigation could have been accomplished without such an intrusion and that the sergeant's actions in opening the passenger-side door were without reasonable, articulable suspicion. These arguments are unavailing.

The record supports the district court's conclusion that the sergeant's act of opening the passenger-side door at the beginning of the encounter with Doe was "tied to and justified by reasonableness." Our review of the record confirms that each of the sergeant's actions during this encounter was for the legitimate purpose of identifying Doe and ensuring his welfare. The sergeant testified that he wanted to identify the driver and "make sure that the driver was okay" based on information he received from dispatch reporting that the driver hit a center median. Based on this and other evidence in the record, the district court specifically determined that, following a lawful traffic stop, the sergeant reasonably approached the vehicle "given the unknown state of the driver, reports that were provided to the Sergeant prior to initiating the traffic stop, and the conduct the Sergeant observed." This is consistent with the district court's finding that the sergeant stopped the vehicle to "determine whether [Doe] was okay as he did not know whether the driver was impaired or required additional aid."

6

Any incremental intrusion associated with the opening of the passenger-side door was therefore reasonably tied to the original purpose of the lawful traffic stop and appropriate under the circumstances. *See, e.g.*, *State v. Ferrise*, 269 N.W.2d 888, 891 (Minn. 1978) (holding an officer opening a vehicle door was reasonable where the vehicle was covered in snow and the officer could not see the passenger); *State v. Lopez*, 698 N.W.2d 18, 24 (Minn. App. 2005) (holding an officer opening a vehicle door was reasonable when responding to a call that someone was asleep or unconscious in a parking lot); *see also State v. Perry*, No. A08-0083, 2009 WL 233937, at *1, *3-4 (Minn. App. Feb. 3, 2009) (holding an officer opening a vehicle door was reasonable when the officer responded to a call that a car was weaving, observed the parked car for ten minutes, and then found the driver asleep).[1]

Doe nonetheless argues that the sergeant's actions were an unreasonable expansion of the traffic stop, citing our nonprecedential opinion *State v. Stevenson*, No. A21-1142, 2022 WL 3152587, at *1, *5-6 (Minn. App. Aug. 8, 2022) (holding law enforcement opening a vehicle door was unreasonable where law enforcement stopped a vehicle for having no front license plate and expired tabs in a parking lot and the reason for opening the door was general officer safety). But the facts available to the sergeant when he stopped Doe differ from those in *Stevenson* in two notable ways. First, the sergeant conducted the traffic stop and opened the vehicle door because of concern for Doe's wellbeing and not an equipment violation, which was the reason for the stop in *Stevenson*. 2022 WL 3152587,

---

[1] We cite nonprecedential opinions for their persuasive authority. Minn. R. Civ. App. P. 136.01, subd. 1(c).

at *6.  Second, the sergeant's expansion of the stop was reasonably connected to the reason for the traffic stop.  In *Stevenson*, the reasons for the traffic stop were not connected to the reason for the expansion—officer safety.  *Id.* at *5-6.

With the facts available to the sergeant at the time he opened the passenger-side door, a person of reasonable caution would believe that the action taken was appropriate. *See Askerooth*, 681 N.W.2d at 365.  Therefore, the sergeant acted lawfully in opening the passenger-side door.

### *Driver-Side Door*

Doe also argues that the district court erred in concluding that the sergeant's actions in opening the driver-side vehicle door were reasonable because the sergeant had "no need to search or seize Doe's vehicle."  We disagree.

The record supports the district court's determination that the sergeant acted reasonably in opening the driver-side door.  Because Doe was an unlicensed driver and not lawfully permitted to operate a vehicle, the sergeant planned to have Doe exit the vehicle so the sergeant could drive Doe up the road.  "[A] police officer may order a driver out of a lawfully stopped vehicle without an articulated reason."  *Id.* at 367 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)); *see also Ferrise*, 269 N.W.2d at 890 (recognizing that a law-enforcement officer opening a door to order an occupant out of a vehicle is not distinguishable from requesting that occupant exit the vehicle and the occupant opening the door themselves).  The sergeant had reasonable justification for this incremental intrusion because he had probable cause to believe that Doe was driving without a license. *See Askerooth*, 681 N.W.2d at 365 (holding that independent probable cause justifies an

8

incremental intrusion during a traffic stop).  The fact that the sergeant could have chosen to allow Doe to exit the vehicle in an alternate manner does not negate the reasonableness of the manner chosen by the sergeant under these circumstances.  We therefore discern no error by the district court in its suppression order.

### *Inevitable Discovery*

Even if the district court erred in its determination that the incremental intrusions into the vehicle were reasonable, we agree with the district court's denial of the suppression motion because law enforcement would have inevitably discovered the firearm through an inventory search of the vehicle after its impoundment.  Doe argues that the evidence would not have been inevitably discovered because the choice to impound the vehicle was not reasonable.

The exclusionary rule bars evidence "obtained either during or as a direct result of an unlawful invasion."  *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).  But the inevitable-discovery doctrine is an exception to this rule and applies if the state can show that the fruits of a challenged search inevitably would have been discovered through lawful means.  *State v. Harris*, 590 N.W.2d 90, 104-05 (Minn. 1999).

Inventory searches are an exception to the warrant requirement and are reasonable "because of their administrative and caretaking functions" which "serve to protect an owner[']s property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."  *Gauster*, 752 N.W.2d at 502 (quotation omitted).  Because impoundment "gives rise to the need for and justification of the inventory search, the threshold inquiry when determining the

9

reasonableness of an inventory search is whether the impoundment of the vehicle was proper." *Id.* (quotation omitted). For impoundment to be proper, it must be "conducted pursuant to standardized criteria" and "the State must have an interest in impoundment that outweighs the individual's Fourth Amendment right[s]." *Id.* at 502-03; *State v. Rohde*, 852 N.W.2d 260, 264 (Minn. 2014) (quotation omitted).

The sergeant properly impounded the vehicle driven by Doe. The state's interest in impounding a vehicle may outweigh individual rights if the vehicle is "impeding traffic or threatening public safety and convenience." *Rohde*, 852 N.W.2d at 265 (quotation omitted). The record shows that Doe stopped the vehicle partially in a lane of traffic on a busy highway and that Doe was unable to lawfully move the vehicle himself because he did not have a license. The sergeant reasonably concluded that the vehicle posed a traffic hazard and needed to be removed. Although Doe asserts that the vehicle could have been removed from the highway without impoundment, the fact that law enforcement could have used alternate means to remove the vehicle does not negate the conclusion that the state's interest in impoundment outweighed Doe's Fourth Amendment rights or otherwise undermine the propriety of the sergeant's choice given the circumstances. The record supports the district court's determination that impoundment of the vehicle was proper, and law enforcement would have inevitably discovered the firearm in the resulting inventory search of Doe's vehicle.

**Affirmed.**